EL PUEBLO DE PUERTO RICO, peticionario, *v.* WILFREDO BURGOS TORRES, ETC., acusados y recurridos.

*Número:* CE-85-795 *Resuelto:* 16 de marzo de 1988

710

*Rafael Ortiz Carrión, Procurador General* y *Ricardo E. Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo, peticionario; *José A. Gutiérrez Núñez,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Mediante recurso de *certiorari* el Procurador General cuestiona la desestimación de las acusaciones contra los imputados por los delitos de falsificación, posesión y traspaso

de documentos falsificados. El recurso plantea una controversia novel e importante relativa al significado y alcance de los Arts. 271 y 272 del Código Penal, 33 L.P.R.A. secs. 4591 y 4592. Confirmamos.

## I

Contra los acusados recurridos se presentaron acusaciones por infracción a los delitos siguientes: apropiación ilegal agravada, declaración o alegación falsa sobre delito, conspiración, falsificación de documentos y posesión y traspaso de documentos falsos. Se imputa que en la compraventa y financiamiento de un vehículo de motor "con el propósito de defraudar al Chase Manhattan Bank, [los acusados] poseyeron, circularon y pasaron como genuinos y verdaderos escritos falsos, a sabiendas de que los mismos eran falsos, consistentes dichos escritos de la factura de venta, contrato de venta y solicitud de crédito sobre el vehículo Toyota 1.8 de 1980[,] tablilla 93U655". *Exhibit* III, pág. 5. También se denunció que con el propósito de defraudar a Professional Underwriters Insurance Company falsificaron un "contrato de cesión de derechos, reporte de accidente de interés simple y . . . una declaración jurada". *Exhibit* XI, pág. 91. Según el esquema criminoso imputado, los recurridos participaron en la venta y financiamiento de un vehículo "chocado", el cual se informó posteriormente como apropiado ilegalmente con el propósito de cobrar el seguro. Celebrada la vista preliminar se determinó causa probable en todos los delitos.

Ante una solicitud de desestimación de las acusaciones de acuerdo con la Regla 64(p) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, el tribunal recurrido, mediante resolución y sentencia, desestimó los cargos por infracción a los Arts. 271 y 272 del Código Penal, *supra* (falsificación de documentos y posesión y traspaso de documentos falsificados).

El Tribunal Superior determinó que la "prueba relacionada con los delitos de falsificación en uno y otro caso establece que se cumplimentaron una serie de documentos firmados todos por el co-acusado Wilfredo Burgos Torres en los que se vació información requerida en tales documentos". *Exhibit* XI, págs. 91–92. También encontró que la "firma de[l coacusado] Burgos Torres no fue falsificada o alterada ni se estableció que los docu[mentos] en sí hubieran sido falsificados o materialmente alterados. La prueba giró, más bien, en torno a la *autenticidad de la información vertida en los documentos*". (Énfasis suplido.) *Exhibit* XI, pág. 92.

Examinada la prueba sometida por el Ministerio Público y analizado el Art. 271 del Código Penal, *supra*, el Tribunal Superior concluyó que no había causa probable para las acusaciones porque "[e]n cuanto a los elementos propios del delito así tipificado hubo pues ausencia total de prueba en vista preliminar . . . ". Petición de *certiorari*, pág. 6. En estas circunstancias también estimó que no había causa para acusar por el delito de traspaso de documentos falsos.

No obstante, el Tribunal Superior declaró sin lugar la moción de desestimación de las causas por los delitos de apropiación ilegal agravada, conspiración y declaración o alegación falsa sobre un delito.

Acordamos conceder término a la parte recurrida para que mostrara causa por la cual no debíamos revocar al Tribunal Superior. Oportunamente compareció para oponerse a la expedición del auto. Por su parte, arguye el Procurador General que están presentes los elementos de los delitos descritos, pues no existe controversia de que los acusados traspasaron y circularon unos documentos en los que habían provisto información falsa, con el evidente propósito de defraudar a un banco y a una compañía aseguradora.(1)

---

(1) Chase Manhattan Bank y Professional Underwriters Insurance Company.

Estudiados los antecedentes del Art. 271 del Código Penal, *supra*, se procede a confirmar el dictamen del foro primario por las razones que pasamos a exponer.

## II

▪ Recientemente en *Pacheco v. Vargas, Alcaide*, 120 D.P.R. 404 (1988), hicimos acopio de medios interpretativos y nos dimos a la tarea de investigar cuál era el verdadero bien tutelado por el Art. 236 del Código Penal, 33 L.P.R.A. sec. 4432, al resolver la controversia allí planteada. Dijimos en aquella ocasión que "[a]l interpretar las palabras del Código Penal y resolver la controversia ante este Foro reiteramos como principio cardinal de hermenéutica que al lenguaje de una ley debe dársele la interpretación que valida el propósito que tuvo el legislador al aprobarla". Expresamos igualmente que "[e]n buena metodología adjudicativa se debe analizar la ley 'tomando en consideración los fines que persigue . . .'". *Pacheco v. Vargas, Alcaide*, supra, pág. 409.

Hoy, también encauzados por normas precisas de hermenéutica, nos enfrentamos a una idéntica operación intelectual en el caso concreto.

▪ La primera obligación del intérprete consiste en examinar el texto legal para apreciar si su sentido es claro. Dispone nuestro Código Penal, en sus Arts. 271 y 272, *supra*, lo siguiente:

*Falsificación de documentos*

Toda persona que con intención de defraudar a otra hiciere, en todo o en parte, un documento, instrumento o escrito falso, mediante el cual se creare, transfiriere, terminare o de otra forma afectare cualquier derecho, obligación o interés, o que falsamente alterare, limitare, suprimiere o destruyere, total o parcialmente, uno verdadero, será sancionada con pena de reclusión por un término fijo de nueve (9) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser

aumentada hasta un máximo de catorce (14) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) años.

*Posesión y traspaso de documentos falsificados*

Toda persona que con intención de defraudar a otra posea, use, circule, venda, pase o trate de pasar como genuino o verdadero cualquier documento, instrumento o escrito de los especificados en la sección anterior a sabiendas de que los mismos son falsos, alterados, falsificados o imitados, será sancionada con pena de reclusión por un término fijo de nueve (9) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de catorce (14) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) años.

La claridad y precisión de un estatuto de carácter penal es condición de su validez en nuestro ordenamiento jurídico. Como aspecto del mismo principio debe negarse cabida a la analogía en materia penal. Art. 8 del Código Penal, 33 L.P.R.A. sec. 3031. Solamente en casos verdaderamente excepcionales y por la repercusión que en Derecho Penal tienen las normas de otras ramas jurídicas afines, pudiera permitirse la aplicación analógica de un precepto para suplir el vacío de esas normas. Este principio impide en materia penal, y so color de interpretación judicial, que los jueces nos lancemos a labores creadoras.

Aclarado este extremo es fácil entender cómo en el campo penal la interpretación realizada por los tratadistas carece de valor obligatorio. Su fuerza reside en la bondad de los argumentos atemperados, claro está, por el texto claro de la ley. Naturalmente, tienen particular valor las opiniones de aquellos juristas que influyeron en el legislador positivo, como ocurre en Puerto Rico con los profesores José Pagán Rodríguez, José Miró Cardona, Helen Silving, Manuel López Rey, y otros. D. Nevares-Muñiz, *Derecho Penal Puertorriqueño: Parte General*, Hato Rey, Ed. Inst. Desarrollo del

Derecho, 1983, pág. 41 *et seq.* De igual forma, ante el sentido claro de la ley, y sobre todo *cuando las palabras tienen un significado histórico y jurídico ineludible,* la doctrina ofrece en esta área un valioso recurso.

Precisamente este es el caso que hoy tenemos ante la consideración de esta curia. Allá para el 1968 escribía el profesor Miró Cardona con referencia a la versión principal del Proyecto Pagán: "El Proyecto realiza una síntesis demasiado violenta en la disciplina de la [f]alsedad [d]ocumental. Si indeseable es el perturbador casuísmo seguido por numerosas legislaciones, no es menos dañoso ceñir en demasía el tratamiento de dichos delitos. En tres artículos el Proyecto encapsula todas la modalidades del delito y entre las mismas, harto escondida, se halla la falsedad ideológica." J. Miró Cardona, *Borrador y notas explicativas al proyecto de Código Penal redactado por Francisco Pagán Rodríguez,* San Juan, 1967, T. 2, págs. 249–250.

Al referirse el autor precitado específicamente a ese concepto oscuro de falsedad ideológica, decía: "La falsedad ideológica se integra cuando la alteración de la verdad recae en el contenido ideativo del documento. La misma implica una divergencia entre [la verdad real y] la verdad expresada en el documento. *Cometen este delito el funcionario público, el Notario o quien venga obligado por la Ley a suscribir o autenticar un documento. Es obvio que el particular no puede incurrir en este delito excepto cuando coetáneamente forme el documento falso.*" (Énfasis suplido.) Miró Cardona, *op. cit.,* pág. 251.

El profesor Miró Cardona estaba en lo cierto. Nuestro Código Penal de 1974 recibió influencias muy variadas; fuentes procedentes de la tradición civilista, Proyecto Soler de un código penal para Argentina, el Proyecto Peco de un código penal para Uruguay, y otras fuentes procedentes del derecho común anglosajón (Código Penal Modelo del Ameri-

can Law Institute y Código Penal de Puerto Rico, ed. 1902). Nevares-Muñiz, *Derecho Penal Puertorriqueño: Parte General, op. cit.*, pág. 43. El Código Penal Argentino de 1958–1959, obra de gran prestigio, ejerció influencia decisiva. Vistas conjuntas Cámara y Senado, 16 de diciembre de 1970; Informe del Senado sobre el P. del S. Núm. 753 (1974).

El Art. 271 de nuestro Código Penal, *supra*, proviene fundamentalmente y casi textualmente en sus aspectos básicos de los Arts. 292, 294 y 296 del Código Penal Argentino. Sin embargo, se aparta de sus fuentes en áreas sensitivas, lo que lo convierte en un híbrido peligroso cuando incorporamos, sin mayor análisis, figuras pensadas para aquel derecho. Véase, por ejemplo, Miró Cardona, *op. cit.*, págs. 253–254.

■ La glosa civilista acepta —y el Código Argentino en especial contiene— dos tipos básicos de falsedad: la falsedad material y la falsedad ideológica. Brevemente, en la *falsedad material* la alteración de la verdad se origina mediante la alteración material del documento (al raspar, borrar la firma, o añadir palabras o guarismos). Se trata de la imitación de una forma auténtica; el falsificador debe esforzarse por hacer otra (forma) tan parecida al original que pase por buena. S. Soler, *Derecho Penal Argentino*, Buenos Aires, Tipográfica Editora Argentina, 1956, T. V, pág. 309. Sólo de ese modo se puede falsificar un billete de banco, un sello de correo o un billete de lotería. E. Cuello Calón, *Derecho Penal*, Barcelona, Ed. Bosch, 1975, T. II (parte especial), pág. 263; Miró Cardona, *op. cit.*, pág. 250; Soler, *op. cit.*, pág. 309.[2]

---

[2] Añade un tratadista argentino:

"La falsedad material recae en la escritura misma, y puede consistir en hacerla íntegramente, o en agregar o en reemplazar parte de ella (CARRARA, *Programa*, sec. 3648). En este punto, es importante marcar la diferencia entre lo que es *auténtico* y lo que es *verdadero*. La falsedad material se refiere esencialmente a la *autenticidad* del documento, es decir a la condición de emanado de su autor o, si se quiere, de quien aparece como tal. . . . Pero la pura alteración de la verdad no

■■■■ A esa manera básica, únese la *falsedad ideológica*. Ésta existe en un acto incluso externamente verdadero, pero contiene declaraciones mendaces. Se llama "ideológica" porque el documento no es falso en sus condiciones de existencia, "sino que son falsas las ideas que en él se quieren afirmar como verdaderas". C. Fontán Balestra, *Tratado de Derecho Penal*, Buenos Aires, Ed. Abeledo-Perrot, 1980, T. VII, pág. 561. Dentro de una forma jurídica correcta se introduce un relato falso. Mientras la falsedad material es perceptible por algún signo físico exterior, la falsedad ideológica no se aprecia por señas o indicios materiales. Fontán Balestra, *op. cit.*, págs. 560–561.

En el Código Argentino la falsificación puede lograrse de cuatro maneras:

a) *Haciendo* un documento que tenga la apariencia de verdadero.(3)

b) *Adulterando* un documento verdadero.

---

es apta para configurar una falsedad material. De lo dicho resulta que un documento puede ser materialmente auténtico y, a su vez falso, en cuanto a su contenido, del principio al fin, o puede ser completamente verídico, en cuanto al contenido y, sin embargo, no auténtico; el titular del derecho, por ejemplo, el acreedor, puede falsificar (materialmente) el documento, así como puede hacerlo un tercero. . . ." C. Fontán Balestra, *Tratado de Derecho Penal*, Buenos Aires, Ed. Abeledo-Perrot, 1980, T. VII, pág. 560.

(3) "Artículo 292

"El que *hiciere* en todo o en parte un documento falso o *adultere* uno verdadero, de modo que pueda resultar perjuicio, será reprimido con reclusión o prisión de 1 a 6 años, si se tratare de un instrumento público y con prisión de 6 meses a 2 años, si se tratare de un instrumento privado.

"Si el documento falsificado o adulterado fuere de los destinados a acreditar la identidad de las personas o la titularidad del dominio o habilitación para circular de vehículos automotores, la pena será de 3 a 8 años.

"Para los efectos del párrafo anterior, están equiparados a los documentos destinados a acreditar la identidad de las personas, aquellos que a tal fin se dieren a los integrantes de las Fuerzas Armadas, de seguridad, policiales o penitenciarias, las cédulas de identidad expedidas por autoridad pública competente, las libretas cívicas o de enrolamiento, y los pasaportes." (Énfasis suplido y escolio omitido.) M. Ossorio y Florit, *Código Penal de la República Argentina: comentarios, jurisprudencia, doctrina y legislación complementaria*, Buenos Aires, Ed. Universidad, 1980, pág. 435.

c) *Insertando en un documento auténtico, afirmaciones falsas.*(4)

d) *Suprimiendo* el documento que determinaría un juicio verdadero.(5)

Los casos "a", "b" y "d" responden al tipo de falsedad material; el "c" es la llamada ideológica. Soler, *op. cit.*, pág. 371.

En Puerto Rico las acciones enunciadas en el Art. 272 del Código Penal, *supra*, son precisamente *hacer, alterar, limitar, suprimir* o *destruir*. Todas se refieren a la falsedad material, extrínseca o física. La idea de *hacer* no ofrece dificultad: se trata de la creación completa del documento. De no ser así, el hecho sólo sería una falsificación parcial, una *alteración* o adulteración. "Hacer" un documento será, por lo tanto, falsificar imitando los signos de autenticidad. "Alterar" será aprovechar los signos de autenticidad para referirlos a un contenido distinto. Las acciones que consisten en *limitar, suprimir* o *destruir* también responden al tipo de falsedad material. La supresión puede ser parcial y entonces se obra sobre el contenido que puede resultar inútil, por ejemplo, al hacerlo ilegible de modo que no es posible entenderlo en su sentido específico. Por último, el documento se "destruye" cuando se da fin a su existencia material total o parcialmente. Quemar, romper o borrar, son una de las tantas maneras de destruir. La doctrina y jurisprudencia ci-

---

(4) "Artículo 293

"Será reprimido con reclusión o prisión de 1 a 6 años, el que insertare o hiciere insertar en un instrumento público declaraciones falsas, concernientes a un hecho que el documento deba probar, de modo que pueda resultar perjuicio . . . ." Ossorio y Florit, *op. cit.*, pág. 438.

(5) "Artículo 294

"El que *suprimiere* o *destruyere*, en todo o en parte, un documento de modo que pueda resultar perjuicio, incurrirá en las penas señaladas en los artículos anteriores, en los casos respectivos." (Énfasis suplido.) Ossorio y Florit, *op. cit.*, pág. 440.

vilistas han mantenido con gran claridad y fuerza los criterios expresados. Véanse: Fontán Balestra, *op. cit.*, pág. 562 *et seq.*; Soler, *op. cit.*, pág. 372 *et seq.*; M. Ossorio y Florit, *Código Penal de la República Argentina: comentarios, jurisprudencia, doctrina y legislación complementaria*, Buenos Aires, Ed. Universidad, 1980, pág. 435 *et seq.*

Dadas las expresiones que utilizó el legislador puertorriqueño, no cabe duda alguna de que estamos ante la falsedad material. Sobre la falsedad ideológica, que hoy nos negamos a introducir por fíat judicial, citamos formalmente de la doctrina:

> Junto a las demás formas de falsedad: imitación, adulteración, supresión, se encuentra reprimida otra que, según vimos, presenta caracteres muy particulares: la llamada falsedad ideológica. A ella se refiere el [A]rt. 293: "Será reprimido con reclusión o prisión de uno a seis años, el que insertare o hiciere insertar *en un instrumento público* declaraciones falsas, concernientes a un hecho que el documento deba probar, de modo que pueda resultar perjuicio".

> . . . . . . . .

> Tales detalles muestran la verdadera naturaleza de este género de falsedades, y cuál es la razón de que la falsedad ideológica *solamente sea punible cuando se produce en instrumentos públicos propiamente dichos*. Ningún documento privado, incluso los documentos equiparados del [A]rt. 297, se encuentra comprendido en esta disposición, sin perjuicio de que ciertas falsedades ideológicas privadas sean previstas expresamente y en *forma excepcional*, y no siempre bajo el rubro de la fe pública. (Énfasis suplido.) Soler, *op. cit.*, págs. 384–386.

Y dice el mismo autor:

> Ahora, poniendo en relación estas dos formas fundamentales de falsedad con las dos clases de documentos a que hemos hecho referencia, se comprenderá fácilmente la razón del diferente alcance de la falsificación y de la falsedad, según se trate de documento público o de documento privado: *la fal-*

*sedad ideológica o histórica solamente es punible en la medida en que vaya inserta en un documento cuyas formas sean específicamente señaladas por el derecho como indicativas de autenticidad, es decir, los documentos públicos,* y solamente serán alcanzados otros documentos en la medida indispensable para garantizar ciertos bienes jurídicos, *mediante la específica incriminación de ciertas falsedades ideológicas en documento privado.*

. . . . . . . .

Si se sancionara también para los documentos privados el deber de que su contenido sea veraz, se haría poco menos que imposible la vida civil. BINDING dice, con razón, que esto sería contrario no sólo a todo derecho, sino a toda razón. El deber de escribir siempre la verdad y solamente la verdad puede ser un deber moral pero no un deber jurídico. Para asumir este carácter es necesario que en consideración a la naturaleza particular de ciertas relaciones, aquel deber sea *positivamente* sancionado. Como consecuencia, la falsedad ideológica en documento privado solamente es punible por excepción, y no siempre en consideración a la falsedad en sí misma. (Énfasis suplido.) Soler, *op. cit.*, pág. 353–354.

En otras palabras, la falsedad ideológica, también llamada intelectual, se prevé con carácter general únicamente para los instrumentos públicos. Bajo esta figura, el particular *por sí* solo no puede realizar la materialidad del hecho; quien ha de hacer la inserción es el oficial público. Miró Cardona, *op. cit.*, pág. 251; Fontán Balestra, *op. cit.*, pág. 571; Ossorio y Florit, *op. cit.*, pág. 438 *et seq.*

El legislador puertorriqueño conocía que la falsedad ideológica no es punible cuando está contenida en un instrumento privado. Fontán Balestra, *op. cit.*, pág. 571. No cabe la menor duda que en el caso de autos los documentos en controversia son documentos privados. Como expresamos, la falsedad ideológica en documento privado solamente es punible por excepción y requiere acción legislativa positiva, tal y como se hizo en Argentina para el caso del

certificado médico falso.(6) "En el art. 295 se prevé el caso especial de algunos certificados médicos. La razón de ello consiste en que el certificado médico es un documento privado y, *no siendo punible la falsedad ideológica en esa clase de documentos, es preciso prever específicamente como figuras especiales todos los casos que expresamente se quiera castigar.*" (Énfasis suplido.) Soler, *op. cit.*, pág. 396. En este caso el sujeto calificado "autor del delito" es solamente médico y, al tratarse de un documento privado, la consumación del delito se ocasiona con su uso. Ossorio y Florit, *op. cit.*, pág. 442.

No existe en el Código Penal puertorriqueño delito expreso definido, al menos como falsificación, en términos de falsedad ideológica.

 El intento de síntesis del Art. 272 del Código Penal, *supra*, representa desde luego un valor.(7) Sin em-

---

(6) "Artículo 295

"Sufrirá prisión de 1 mes a 1 año, el médico que diere por escrito un certificado falso, concerniente a la existencia o inexistencia, presente o pasada, de alguna enfermedad o lesión cuando de ello resulte perjuicio.

"La pena será de 1 a 4 años, si el falso certificado debiera tener por consecuencia que una persona fuera detenida en un manicomio, lazareto u otro hospital." Ossorio y Florit, *op. cit.*, pág. 441.

(7) "I. EL BIEN JURÍDICO TUTELADO.—El conjunto de delitos que nuestra ley agrupa bajo la designación de delitos contra la fe pública, ha dado lugar como pocos a un debate doctrinario ya secular, que a[ú]n no puede decirse concluído, tendiente a delimitar con exactitud técnica cuál es el bien o interés jurídico que individualiza a estas infracciones, y que permita clasificar y agrupar todas las figuras con esa exactitud alcanzada por otros capítulos de la legislación penal moderna.

"A la dificultad del problema contribuyen por igual razones históricas y teóricas. La falsedad, en efecto, es, como la violencia, un modo de conducta genéricamente reprensible, capaz de conducir a los más variados delitos. Muchas son, en efecto, las figuras en las que la falsedad, en alguna de sus variadísimas formas, desempeña un papel importante. La idea misma de fraude es inescindible de la de falsedad. Además, otras clases de hechos que nada tienen que ver con perjuicios patrimoniales, adquieren carácter delictivo cuando son cometidos mediante una falsedad." S. Soler, *Derecho Penal Argentino*, Buenos Aires, Tipográfica Editora Argentina, 1956, T. V, págs. 303–304.

bargo, olvida el Procurador que la "intención de defraudar" se da en *toda* modalidad de falsedad. No existe tal cosa como la falsedad "por negligencia". Esta intención, no obstante, está regida por las modalidades legisladas: hacer, alterar, limitar, suprimir o destruir, claramente referidas a la figura de la falsedad material.

▆▆▆▆ En resumen, la operación intelectual de carácter lógico-jurídico nos lleva a concluir que en el caso de autos no puede configurarse el delito de falsificación. Corresponde a la Legislatura la última palabra sobre la creación de un delito de falsificación por afirmaciones falsas en documentos auténticos, públicos o privados. Aunque rechazamos una visión estática y cristalizada de nuestro ordenamiento penal, como jueces debemos cuidarnos de no apartarnos de la ley misma. No podemos eludir en el caso concreto el verdadero sentido jurídico de las palabras. Tampoco podemos atribuirle al legislador móviles que no expresó o absurdos a la luz de la técnica que deliberadamente utilizó.

Por las razones que anteceden, *se expedirá el auto, se dictará sentencia que confirma la resolución recurrida y se devolverá el caso a instancia para la continuación de los procedimientos por las acusaciones pendientes y cualquiera otra que proceda en derecho.*[8]

El Juez Asociada Señor Negrón García emitió voto concurrente al cual se une el Juez Asociado Señor Rebollo López. La Juez Asociada Señora Naveira de Rodón emitió opinión disidente.

---

[8] Este dictamen no impide que el Ministerio Público enmiende o someta acusaciones adicionales por cualquier otro delito aplicable a los hechos de este caso.

—O—

Opinión concurrente del Juez Asociado Señor Negrón García a la cual se une el Juez Asociado Señor Rebollo López.

I

Coincidimos con la opinión mayoritaria, de que el Art. 271 del Código Penal, 33 L.P.R.A. sec. 4591, prevé la falsedad material y no la ideológica. Al respecto, como indica su nombre, la "[f]alsedad *material* se integra todas las veces que la mutación de la verdad recae *materialmente* sobre la escritura ya (1) formando en todo o en parte un documento falso o (2) alterando uno legítimo. . . . *La formación es la creación del documento. Puede ser formación total o parcial.* Esta última implica dificultades técnicas para precisarla. Puede ser la 'falsedad accesoria' de un documento legítimo (agregación). . . . La alteración supone un documento legítimo, al cual se le modifica el tenor: 1) por agregación; 2) por supresión. . . . La Falsedad ideológica se integra cuando la alteración de la verdad recae en el *contenido ideativo del documento.* La misma *implica una divergencia entre la verdad real y la verdad expresada en el documento".* (Énfasis suplido.) J. Miró Cardona, *Borrador para un proyecto de Código Penal Puertorriqueño,* XLI Rev. Jur. U.P.R. 597–598 (1972).

Ahora bien, en estricta juridicidad, no procede la desestimación total de las acusaciones contra Wilfredo Burgos Torres *et al.* De acuerdo con nuestro ordenamiento penal, el dictamen correcto que debió prevalecer es modificar la Resolución del Tribunal Superior, Sala de Aibonito, de 4 de octubre de 1987. Nos explicamos.

En el orden procesal, el planteamiento se hace de acuerdo con la Regla 64(p) de Procedimiento Criminal, esto es, que la determinación de causa no es "con arreglo a la ley y a derecho". 34 L.P.R.A. Ap. II, R. 64(p). En esa etapa, el

dictamen del foro de instancia puede ser una negativa total a desestimar, acceder a la misma o instruir que el caso continúe bajo el delito correcto que la prueba prima facie tienda a establecer.

A través de este prisma de alternativas decisorias, los hechos expuestos por el Ministerio Fiscal contra los imputados Burgos Torres *et al.* —según la prueba disponible *estipulada*— son al efecto de que cumplimentaron una serie de documentos que Burgos Torres firmó. Entre estos documentos figuran Factura, Control de Venta de un Automóvil y *Solicitud de Financiamiento* al Chase Manhattan Bank. Si bien los mismos no fueron falsificados ni materialmente alterados, en éstos insertaron y vaciaron información falsa con el propósito de mover al banco a conceder crédito.

Estos hechos encajan perfectamente en el delito estatuido en la Sec. 33 de la Ley Núm. 55 de 12 de mayo de 1933 (7 L.P.R.A. sec. 155), según enmendada, que en lo pertinente dispone:

> Cualquier persona que a sabiendas, en su propio nombre o en representación de una persona natural o jurídica, *suministre a un banco* o banco extranjero *información* o estados financieros *falsos, con el propósito de inducir al banco* o banco extranjero *a conceder crédito, a dar facilidades bancarias o a efectuar cualquier negocio con la persona*, natural o jurídica, con relación a la cual se rindieron los estados financieros falsos o se *dio la información falsa*, será culpable de un delito menos grave (*misdemeanor*) y convicta que fuere será castigada con una multa no menor de mil dólares (1,000) ó prisión por un término no menor de un año, o ambas penas, a discreción del tribunal. (Énfasis suplido.)

Este precepto tipifica, por vía de excepción, la *falsedad ideológica*, esto es, se consignan u omiten afirmaciones, hechos o antecedentes que no se ajustan a la verdad. El resultado es "un documento '*auténtico o genuino*' *en forma; pero no veraz en su contenido*". Miró Cardona, *supra*, pág. 598.

Se impone, pues, la enmienda de las acusaciones y el encauzamiento de estos hechos bajo este precepto en sustitución del delito de falsificación, en virtud del régimen de las Leyes Penales Especiales consignado en el Art. 5 del Código Penal, 33 L.P.R.A. sec. 3005. Véase *Pueblo v. Mena Peraza*, 113 D.P.R. 275 (1982). No hacerlo constituye un desvío sustancial de la justicia.

—O—

Opinión disidente emitida por la Juez Asociada Señora Naveira de Rodón.

Por entender que en este caso se configuró el delito de falsificación en su modalidad de falsedad ideológica, disentimos de la opinión del Tribunal.

El Art. 271 del Código Penal de 1974 (33 L.P.R.A. sec. 4591) penaliza el que una persona, con intención de defraudar, haga en todo o en parte un documento o escrito falso mediante el cual se afecte cualquier derecho, obligación o interés. El artículo también penaliza el que se altere o destruya un documento verdadero.[1] El elemento esencial de este delito es la intención de defraudar, ya sea mediante la modalidad de hacer en todo o en parte un documento o escrito falso, o mediante la modalidad de alterar, imitar o suprimir total o parcialmente un documento verdadero. D. Nevares-Muñiz, *Código Penal de Puerto Rico (revisado y*

---

[1] Art. 271:

"Toda persona que con intención de defraudar a otra hiciere, en todo o en parte, un documento, instrumento o escrito falso, mediante el cual se creare, transfiriere, terminare o de otra forma afectare cualquier derecho, obligación o interés, o que falsamente alterare, limitare, suprimiere o destruyere, total o parcialmente, uno verdadero, será sancionada con pena de reclusión por un término fijo de nueve (9) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de catorce (14) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) años." 33 L.P.R.A. sec. 4591.

*comentado*), San Juan, Ed. Rev. C. Abo. P.R., 1986, pág. 442; *Pueblo* v. *Rivera*, 69 D.P.R. 411 (1948); *Pueblo* v. *Ortiz Castro*, 90 D.P.R. 593 (1964).

Generalmente se piensa que se falsifica un documento cuando el mismo se crea total o parcialmente con el conocimiento de que es falso el documento así creado. Limitamos así nuestra visión de falsificar a crear o imitar algún tipo de documento. La falsificación está definida como: (1) "[a]cción y efecto de falsificar"; (2) "[d]elito de falsedad que se comete en documento público comercial o privado . . .". Falsedad, a su vez, se define como "falta de verdad o autenticidad".(2) Según las anteriores definiciones podemos decir que también se comete el delito de falsificación cuando se falta a la verdad en un documento ya sea éste público, comercial o privado. Cuando hablamos de falsificar un documento debemos diferenciar entre el documento propiamente y el contenido del mismo. Si lo que se falsifica es el documento mismo estamos ante una falsedad material, mientras que si faltamos a la verdad en lo expresado en el documento afectando así su contenido estamos ante la llamada falsedad ideológica. Esta falsedad ideológica o intelectual es "aquella que existe en un acto incluso exteriormente verdadero, cuando contiene declaraciones mendaces; y se llama precisamente ideológica porque el documento no es falso en sus condiciones de existencia, sino que son falsas las *ideas* que en él se quieren afirmar como verdaderas". (Énfasis en el original.) C. Fontán Balestra, *Tratado de Derecho Penal*, Buenos Aires, Ed. Abeledo-Perrot, 1980, pág. 561. Tenemos, pues, que en la doctrina civilista se considera constitutivo del delito de falsificación el poner información falsa en un documento verda-

---

(2) *Diccionario de la Lengua Española*, 20ma ed., Madrid, Ed. Espasa-Calpe, 1984, T. I, pág. 629.

dero sin limitarse a la modalidad de crear, imitar, alterar o suprimir en todo o en parte un documento.(3)

Ahora bien, el poner información falsa en un documento no necesariamente convierte a éste en uno falso. Es claro que no puede constituir el delito de falsificación cualquier mutación de una verdad. De ser así se afectaría grandemente la vida social y el tráfico comercial ante el temor de las consecuencias que conllevaría el poner cualquier información falsa en un documento. "La ley no puede ir muy lejos en la previsión de requisitos sin hacer incursiones excesivamente limitadoras del libre desenvolvimiento individual. . . . El deber de escribir siempre la verdad puede ser un deber moral, pero no un deber jurídico. La falsedad ideológica en documento privado solamente es punible por excepción y no siempre en consideración a la falsedad en sí mismo." E. Casas Barquero, *El delito de falsedad en documento privado*, Barcelona, Ed. Bosch, 1984, págs. 24–25. Por lo tanto, para que estemos ante el delito de falsificación en la modalidad de poner información falsa en un documento verdadero es necesario que la falsedad de la información afecte elementos esenciales del documento, mostrando así relevancia en los efectos que el mismo deba producir. Es necesario que el documento constituya la prueba de una relación jurídicamente apreciable y, además, que la alteración del mismo pueda causar perjuicio a un tercero. "Es tan delicado este punto que incluso debe tenerse presente que la falsedad ideológica no se refiere a cualquier falsedad o mentira introducida en el documento, sino solamente aquellas que recaen sobre el hecho que el instrumento mismo prueba *erga omnes*." S. Soler, *Derecho Penal*

---

(3) Como es sabido, nuestro Código Penal mezcla disposiciones procedentes de la tradición civilista con otras procedentes del *common law*, por lo que podemos recurrir a ambas tradiciones para una interpretación de nuestros estatutos penales.

*Argentino*, Buenos Aires, Tipográfica Editora Argentina, 1956, T. V, pág. 386.

En resumen, para que el poner información falsa en un documento privado sea constitutivo del delito de falsificación es necesario que la información afecte la esencia misma de un documento capaz de crear una relación jurídica entre las partes involucradas, la cual se vería afectada por razón de la falsedad en la información causándose así un perjuicio.(4)

En el caso ante nos están presentes las circunstancias necesarias para que se configure el delito de falsificación. Con clara intención de defraudar, al utilizar información falsa, se simuló la venta de un vehículo nuevo para el cual se consiguió el financiamiento. Luego el vehículo fue reportado como hurtado apropiándose los acusados del dinero facilitado a través del financiamiento, perjudicando así al banco y a la aseguradora.

Por los fundamentos expuestos, concluimos que el tribunal de instancia erró al decretar la desestimación de las acusaciones por infracción a los Arts. 271 y 272 del Código Penal de 1974 (33 L.P.R.A. secs. 4591 y 4592).

---

(4) "La mutación de la verdad, bien sea material, bien ideológica, para que constituya el crédito de falsedad criminal, requiere la presencia, como presupuesto objetivo o condición material de punibilidad, del daño real en la vida del Derecho, al menos apreciado potencialmente, por tener aptitud para generar un perjuicio, que se identifique con la antijuridicidad de la acción, *por lo que únicamente las variaciones esenciales o genuinas en los extremos trascendentes que hayan de garantizar la fe documentada, y no las irrelevantes, innocuas o accesorias, son las que incidiendo en valores públicos o privados dignos de amparo, deben acogerse dentro de su contenido y reprocharse*, por superar la simple inautenticidad formal impune, que no afecta a la seguridad del tráfico jurídico." (Énfasis nuestro.) E. Casas Barquero, *El delito de falsedad en documento privado*, Barcelona, Ed. Bosch, 1984, págs. 146–147.