EL PUEBLO DE PUERTO RICO, apelado, *v.* FÉLIX J. CABELLO MULERO, acusado y apelante.

*Número:* CR-88-114        *Resuelto:* 10 de marzo de 1992

*Francisco J. Albizu Merced*, abogado del apelante; *Norma Cotti Cruz, Subprocuradora General*, y *Eunice Amaro Garay, Procuradora General Auxiliar*, abogadas de El Pueblo.

## SENTENCIA

El 20 de septiembre de 1988 se celebró juicio por tribunal de derecho al acusado apelante Félix Juan Cabello Mulero. Éste fue encontrado culpable por infracción al Art. 411A de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, según enmendada, 24 L.P.R.A. sec. 2411a. El 2 de diciembre de 1988 fue sentenciado a cumplir veinte (20) años de reclusión. Inconforme, apeló planteando la comisión de cuatro (4) errores.

Luego de examinados y analizados los autos originales y la exposición narrativa de la prueba, y de haber estudiado y evaluado los planteamientos de las partes expuestos en sus respectivos alegatos, determinamos que los errores señalados no se cometieron. Procede confirmar la sentencia apelada.

*Se dicta sentencia que confirma la apelada.*

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Rebollo López y la Juez Asociada Señora Naveira de Rodón emitieron unas opiniones concurrentes. El Juez Asociado Señor Hernández Denton emitió una opinión disidente, a la cual se unió el Juez Presidente Señor Andréu García. El Juez Asociado Señor Fuster Berlingeri no intervino.

(Fdo.) Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López.

Concurrimos con el *resultado* a que se llega en la Sentencia emitida en el presente caso; esto es, estamos contestes en que la convicción que, por infracción al Art. 411A de la Ley de Sustancias Controladas de Puerto Rico, según enmendada, 24 L.P.R.A. sec. 2411a, decretara el foro de instancia *debe ser confirmada.*

Como surge de una somera lectura, tanto de la opinión concurrente emitida por la Juez Asociada Señora Naveira de Rodón como de la opinión disidente suscrita por el Juez Asociado Señor Hernández Denton, la diferencia principal que separa sus posiciones se circunscribe a si la referida disposición legal es o no constitucional por alegadamente adolecer de vaguedad el término que contiene la misma referente a los "alrededores de una escuela". *Dados los hechos específicos del caso ante nuestra consideración, la referida controversia de índole constitucional resulta ser innecesaria.*

Constituye doctrina jurisprudencial trillada y reiterada de que los tribunales no deben abordar planteamientos de índole constitucional cuando se puede disponer del caso en

armonía con los intereses del apelante y en consonancia con los mejores fines de la justicia; *esto es, cuando ello resulta innecesario hacerlo.* Véanse, entre otros: *E.L.A. v. Aguayo,* 80 D.P.R. 552, 595 y 596 (1958); *Suárez Sánchez v. Tribunal Superior,* 92 D.P.R. 507, 516 (1965); *Mari Bras v. Alcaide,* 100 D.P.R. 506, 513 (1972); *Pacheco v. Srio. Instrucción Pública,* 108 D.P.R. 592, 601 (1979); *Galarza Soto v. E.L.A.,* 109 D.P.R. 179, 180–181 (1979); *P.P.D. v. Admor. Gen. de Elecciones,* 111 D.P.R. 199, 243 (1981).

En el presente caso *es un hecho incontrovertido que el apelante, al realizar la transacción de drogas por la cual se le acusó, estaba ubicado, o parado, frente a una escuela.* Ese hecho *hace completamente innecesario* que determinemos si el referido estatuto adolece o no de vaguedad al no precisar adecuadamente —en términos de metros— la distancia que constituye los "alredededores de una escuela".

El estatuto define el término "alredededores de una escuela" como "toda vía pública o área recreativa *colindante* con los límites por cerca o por cualquier otro signo de demarcación, en cualquier dirección". (Énfasis suplido.) Art. 411A de la Ley de Sustancias Controladas de Puerto Rico, según enmendada, ante. *Resulta forzoso concluir que, conforme la definición que establece dicha ley, cuando una persona está "parada frente a una escuela" se encuentra, obviamente, en los "alredededores" de la misma por cuanto se encuentra en un área "colindante" a dicha escuela.*

Este Tribunal en *Pueblo v. Hernández Colón,* 118 D.P.R. 891, 897 (1987) —citando con aprobación a *Vélez v. Municipio de Toa Baja,* 109 D.P.R. 369 (1980)— señaló que:

> Como norma general, una persona *no puede impugnar* un estatuto a base de que éste sería inconstitucional *en otras circunstancias que no son las suyas* …. Los derechos constitucionales *son personales y no pueden ser invocados de forma vicaria.* (Énfasis suplido.)

En otras palabras, el hecho de que en *otros* casos o situaciones el Estado pueda acusar, bajo el estatuto en con-

troversia, a *otras* personas que estén ubicadas a veinticinco (25), cuarenta (40) o sesenta (60) metros de distancia de una escuela, y que estas personas *puedan levantar* en dichos casos la *posible inconstitucionalidad* del estatuto en cuestión, por razón de vaguedad, *no significa que el aquí apelante lo pueda hacer en el presente caso pues él, repetimos, se encontraba en un área "colindante" a la escuela, esto es, al frente de la misma.* Véase: *E.L.A. v. Aguayo*, ante, pág. 597. *Dicho de otra forma, en cuanto al aquí apelante en particular, el Art. 411A de la Ley de Sustancias Controladas de Puerto Rico, ante, obviamente no es inconstitucional por razón de vaguedad.* Véanse: *Pueblo v. Hernández Colón*, ante; *Pueblo v. Tribunal Superior*, 98 D.P.R. 750 (1970). Resulta, en consecuencia, *totalmente innecesario* todo el análisis inconstitucional que, respecto a la "doctrina de vaguedad", contiene tanto la opinión concurrente de la Juez Naveira de Rodón como la disidente del Juez Hernández Denton.

Considerando el hecho de que ya la Asamblea Legislativa de Puerto Rico enmendó el citado Art. 411A de la Ley de Sustancias Controladas de Puerto Rico para suplir la "laguna" aquí en controversia —esto es, el límite, en metros, del área que cubre dicho estatuto— nuestra ruta decisoria debe circunscribirse a resolver el caso ante nuestra consideración " 'en armonía con los intereses del apelante y en consonancia con los mejores fines de la justicia' ", *Mari Bras v. Alcaide*, ante; *esto es, mediante la emisión de una simple sentencia confirmatoria.*

— O —

Opinión concurrente emitida por la Juez Asociada Señora Naveira de Rodón.

El Ministerio Público presentó una acusación contra el apelante Félix Juan Cabello Mulero, imputándole haber

infringido el Art. 411A de la Ley de Sustancias Controladas de Puerto Rico (en adelante Ley de Sustancias Controladas), Ley Núm. 4 de 23 de junio de 1971, según enmendada, 24 L.P.R.A. sec. 2411a. La violación imputada consistió en que para el 12 de diciembre de 1986, el acusado apelante distribuyó, en los alrededores de una escuela, la sustancia controlada conocida como "cocaína" sin estar autorizado para ello. La alegada transacción ilegal ocurrió frente a la Escuela Elemental Camarones IV ubicada en el barrio Camarones del pueblo de Guaynabo.

Luego de renunciar al juicio por jurado, el apelante fue juzgado por tribunal de derecho. La prueba de cargo consistió en los testimonios del agente encubierto Damián Sánchez Hernández, del Sargento Ernesto Torres Lebrón y del químico forense Oscar Peralta Narváez. Se presentó, además, un sobre de evidencia que contenía la cocaína ocupada al acusado apelante,(¹) así como el informe pericial de sustancias controladas.

## I

*Los hechos*

El foro de instancia oyó la prueba y dirimió la credibilidad. De la exposición narrativa de la prueba surge que los hechos ocurrieron de la forma que procedemos a relatar.

Para el 12 de diciembre de 1986, Damián Sánchez Hernández trabajaba como agente encubierto de la División de Drogas de la Policía de Puerto Rico. Laboraba en conjunto con un confidente de nombre Pedro Aguayo Figueroa a quien conoció a través de su supervisor, el Sargento Er-

---

(¹) El sobre de evidencia contenía a su vez una (1) bolsa plástica transparente con cierre de presión y una línea de color rojo en la parte superior. En esta bolsa había un polvo blanco, identificado por el químico forense como "cocaína", con un peso total de 2.2715 gramos.

nesto Torres Lebrón.([2]) Junto a este confidente realizó alrededor de veintisiete (27) "transacciones", entre las cuales estaba la realizada con el acusado apelante, a quien conoció por el apodo de "El Grande".

Ese día el agente Sánchez Hernández buscó al confidente y fue con éste al Departamento de Justicia para firmar unas declaraciones juradas relacionadas con varias "transacciones" efectuadas con anterioridad a esa fecha. Como a las 5:00 P.M., luego de firmar las declaraciones juradas, partió junto al confidente para Guaynabo, pueblo que constituía parte de su "sector de trabajo" o "área geográfica" en la cual se desempeñaba como agente encubierto. Una vez allí, visitaron el negocio conocido como "Los Amigos", ubicado en la carretera número veinte (20) en la salida del pueblo de Guaynabo hacia el sector "La Muda" del pueblo de Caguas. Llegaron a este negocio alrededor de las 5:40 ó 5:45 P.M. En dicho lugar tomaron unos refrigerios e intentaron hacer "contacto" con "algún traficante de drogas", pero las gestiones fueron infructuosas. Luego de permanecer en dicho lugar alrededor de treinta (30) minutos, salieron en dirección al barrio Camarones de Guaynabo. El agente encubierto conducía el vehículo en que se transportaron y, al llegar al barrio, lo estacionó frente a la Escuela Elemental Camarones IV, como a veinte (20) pies del acusado apelante, quien se encontraba "parado al frente de la escuela, frente donde queda el portón".([3]) Aunque el agente nunca había hecho "transacciones" con el acusado, sí las había efectuado en ese sitio en ocasiones

---

([2]) El confidente era pagado por la División de Drogas de la Policía de Puerto Rico.

([3]) Como corrección a la exposición narrativa de la prueba, tanto el Fiscal como el abogado que representa al acusado en apelación acordaron incluir, con la aprobación del juez de instancia, lo siguiente:

"En las páginas 9, 10 y 11 de la Exposición se utiliza la palabra 'portón' y que [sic] durante la vista del caso se estableció que dicha palabra dentro del contexto de la declaración del agente encubierto no se refería a un objeto material sino al uso popular en cuanto a la entrada de una escuela en Puerto Rico."

anteriores estando el acusado "por el área". El confidente, que se hallaba sentado en el asiento del pasajero, se desmontó y dirigió al acusado. En ese instante el acusado le dijo al confidente en voz alta: "Dile al que está guiando que apague el vehículo y se baje del carro." Íd. El agente obedeció y caminó hasta donde estaban el acusado y el confidente.

Al acercarse, notó que el acusado apelante tenía un bulto en el lado derecho de la cintura, estaba vestido con pantalón crema, camiseta blanca y calzaba zapatos negros.(4) En ese momento el acusado le preguntó si había ido a "capear".(5) Éste contestó en la afirmativa. Acto seguido, el apelante le dijo "que por allí estaban comentando que él era un agente de la policía que se había llevado varias personas del lugar y que lo estaban viendo haciendo [sic] transacciones de drogas nuevamente". Al escuchar esto, el declarante se quedó "tranquilo" y le dijo al acusado que él no era "agente de drogas". Declaró que no pensó que habían descubierto su identidad como agente y no sintió miedo. Inmediatamente, el acusado les preguntó a qué se dedicaban y el confidente le contestó que se dedicaban "a la brega" y que fueron a "capear" media cuarta (1/4) de "perico".(6) El acusado apelante dijo que él tenía ("perico") y que les costaría doscientos cincuenta dólares ($250). Entonces, el confidente le indicó que la consiguiera. El ape-

---

(4) Durante el contrainterrogatorio el agente encubierto declaró que, con relación a los hechos del caso de autos, prestó declaración jurada el 16 de diciembre de 1986. En dicha declaración describió al acusado como John Doe c/p "El Grande", de aproximadamente veintisiete (27) años de edad, blanco, ojos color *"brown"*, pelo castaño, del sexo masculino y de cinco pies ocho pulgadas a cinco pies once pulgadas (5'8"–5'11") de estatura.

En ese momento el abogado defensor solicitó del tribunal que permitiera al acusado ponerse de pie y le pidió al testigo que se acercara hasta dos pies (2') de distancia del acusado. El testigo declaró que su apreciación era que el acusado mide cerca de cinco pies ocho pulgadas (5'8") de estatura.

(5) De acuerdo con lo declarado por el agente encubierto, el término "capear" se utiliza para referirse al hecho de comprar drogas.

(6) Surge del testimonio del declarante que "perico" es uno de los términos utilizados para referirse a la sustancia controlada conocida por cocaína.

lante pidió el dinero y les dijo que lo esperaran allí, lo cual hicieron. En ese momento dos (2) personas que se encontraban cerca del apelante le preguntaron, "Grande, ¿has visto a Carlitos?", por lo que el agente "interpretó" que al acusado le decían "El Grande".

El acusado se retiró y regresó como a los quince (15) minutos. Le entregó al confidente una bolsa plástica grande y transparente, con cierre a presión y una línea roja en la parte superior. La bolsa contenía un polvo blanco. La transacción ocurrió alrededor de las 6:30 P.M.

Terminada la transacción, el agente y el confidente se despidieron del acusado y se marcharon del lugar. Luego, el agente llamó a su supervisor y agente de contacto, el Sargento Ernesto Torres Lebrón. Acordaron verse en el área de San Patricio Plaza alrededor de las 7:30 P.M. Allí el agente entregó a su supervisor la evidencia obtenida. El sobre plástico fue colocado en otro sobre y tanto el agente como el sargento le escribieron sus respectivas iniciales. El sargento llevó la evidencia al Instituto de Ciencias Forenses y la entregó al químico forense Oscar Peralta Narváez para que éste hiciera el análisis correspondiente y certificara si se trataba de sustancias controladas.[7] Luego de examinarla, el químico forense determinó que la evidencia que le fue entregada era cocaína. El agente encubierto vio al acusado nuevamente el día en que éste fue arrestado.

Durante la presentación de la prueba de cargo, la defensa contrainterrogó a los testigos del Ministerio Público. Además, presentó como prueba de defensa varias declaraciones juradas prestadas por el agente encubierto relacionadas con otras transacciones de sustancias controladas. Ninguna de ellas tenía relación con los hechos de este caso.

La defensa anunció que no sentaría como testigo al confidente Pedro Aguayo Figueroa quien, a petición de la pro-

---

[7] La defensa estipuló que se cumplió con los requisitos de la cadena de custodia de la evidencia.

pia defensa, fue traído desde Estados Unidos por el Negociado de Investigaciones Especiales para que declarara en este juicio.([8])

El tribunal encontró al acusado culpable del delito imputado y lo sentenció a cumplir veinte (20) años de reclusión. Inconforme, éste presentó escrito de apelación en el que señaló la comisión de cuatro (4) errores de derecho que se pueden resumir de la manera siguiente: (1) que se le violó el derecho al debido proceso de ley; (2) que erró el tribunal al declarar culpable al acusado, aun cuando existía duda razonable sobre su participación en los hechos delictivos y la prueba de cargo no rebatió la presunción de inocencia; (3) que la prueba desfilada no fue suficiente, y (4) que el testimonio del agente encubierto fue descarnado, estereotipado e increíble.

## II

*La vaguedad y el debido procedimiento de ley*

El apelante nos plantea que se le violó su derecho constitucional al debido procedimiento de ley, pues fue procesado bajo las disposiciones de un estatuto que, en ese momento en particular, adolecía de "vaguedad e imprecisión". Para un análisis adecuado de este error es necesario que hagamos un breve recuento de la inclusión y las enmiendas del Art. 411A de la Ley de Sustancias Controladas, *supra*.

La Ley de Sustancias Controladas fue aprobada el 23 de junio de 1971. Entre sus propósitos, en lo pertinente a la discusión de autos, estuvo la creación de delitos y penalidades aplicables a los que violasen sus disposiciones. En el estatuto original no se incluyó disposición específica al-

---

([8]) La razón aducida para no sentar a este testigo fue que él se negó a declarar a menos que le entregaran la declaración jurada que prestó con relación a los hechos de este caso.

guna dirigida a penalizar, con especial particularidad, las transacciones de sustancias controladas realizadas dentro o en los alrededores de los planteles escolares.

Así las cosas, el 30 de octubre de 1975 se aprobó la Ley Núm. 13, que añadió el Art. 411A a la Ley de Sustancias Controladas, supra. Dicho artículo estableció, en lo pertinente, lo siguiente:

Toda persona que, a sabiendas e intencionalmente y en violación a las disposiciones de esta ley, introduzca, distribuya, dispense, administre, posea o transporte para fines de distribución, venda, regale o entregue en cualquier forma, cualquier sustancia controlada de las incluidas en las Clasificaciones I a V de esta ley, en una escuela pública o privada, o en sus alrededores y mientras se encuentren en funciones escolares, incurrirá en delito grave y convicta que fuere será sentenciada con el doble de las penas provistas por el Artículo 401(b) de esta ley por un delito cometido por primera vez, que envuelva la misma sustancia y la misma clasificación.

Por "escuela" se entenderá el edificio principal y toda edificación, anexo, patio, jardín y área de estacionamiento de la escuela y cubrirá las elementales, secundarias (intermedias), superiores, especializadas y a las universidades y colegios para estudios universitarios. Por escuela especializada se entenderán cubiertas, a los fines de este artículo, a las comerciales, vocacionales o de oficios; aquellas para personas impedidas físicamente, retardadas mentales, sordomudas y ciegas; para personas con limitaciones del habla y en la lectura y cualesquiera otras de naturaleza análoga a las antes mencionadas. Por los "alrededores de una escuela" se entenderá cubierta un área hasta una distancia de veinticinco (25) metros a contarse desde los límites de la escuela, según indicados los límites por cerca o por cualquier otro signo de demarcación, en cualquier dirección.(9) (Énfasis suplido y escolio omitido.) 1975 Leyes de Puerto Rico 882–883.

_____

(9) El Art. 411A de la Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2411a, también dispuso que:

Esta versión del artículo estuvo en vigor hasta el 5 de junio de 1986, fecha en que fue aprobada y comenzó a regir la Ley Núm. 40 (24 L.P.R.A. sec. 2411a). De la expresión de propósitos de dicha ley surge que, entre sus objetivos, se contempló el añadir "la simple posesión como modalidad del delito en las escuelas o sus alrededores, *extender el área cubierta hasta una distancia de doscientos metros radiales* y eliminar la elegibilidad a sentencia suspendida y libertad a prueba". (Énfasis suplido.) 1986 Leyes de Puerto Rico 112. Esta enmienda fue motivada por "la honda preocupación del legislador por la situación del tráfico ilegal de drogas en las escuelas de Puerto Rico". Exposición de Motivos de la Ley Núm. 40, *supra*, 1986 Leyes de Puerto Rico 112. La acción gubernamental que se ha de seguir para enfrentar esta grave situación fue expresada de la forma siguiente:

> Es un deber ineludible del Gobierno atacar severamente el tráfico de sustancias controladas en las escuelas. Hay que proteger a la población escolar de los actos criminales de aquellos que con su conducta delictiva inducen a nuestros niños y a nuestra juventud a iniciarse en la actividad criminal, la adic-

---

"Igualmente incurrirá en delito grave toda persona que, a sabiendas e intencionalmente y en violación a las disposiciones de esta ley, distribuya, dispense, administre, posea o transporte para fines de distribución, venda, regale o entregue en cualquier forma cualquier sustancia controlada de las incluidas en las Clasificaciones I a V de esta ley, en un centro, institución o facilidad pública o privada dedicado a la prevención, diagnóstico, tratamiento y rehabilitación de los adictos a drogas narcóticas o de los dependientes a drogas deprimentes o estimulantes, o en sus alrededores. En caso de convicción el infractor será castigado con la penalidad dispuesta en los párrafos primero y segundo de este artículo, para la primera convicción y para casos de reincidencia, respectivamente.

"Por los 'alrededores de un centro, institución, o facilidad' se entenderá cubierta un área hasta una distancia de veinticinco (25) metros a contarse desde los límites de éstos, según indicados por cerca o por cualquier otro signo de demarcación, en cualquier dirección." 1975 Leyes de Puerto Rico 883–884.

ción y la dependencia a drogas, problema que está afectando tan adversamente a la comunidad.

Dadas las circunstancias imperantes en los planteles y sus alrededores y como medida para proteger la salud y seguridad de nuestros niños, *es preciso ampliar el área que cubre los alrededores de las escuelas* y eliminar la elegibilidad de los que cometen estos delitos a los beneficios de la sentencia suspendida y libertad a prueba. (Énfasis suplido.) Exposición de Motivos de la Ley Núm. 40, *supra.*

No obstante haber indicado en su expresión de propósitos que la enmienda tenía, entre otros, el objetivo de "extender el área cubierta hasta una distancia de doscientos metros radiales" (Expresión de Propósitos de la Ley Núm. 40, *supra*), al definir lo que constituye "alrededores" de las escuelas, la ley no incluyó medida específica alguna. Además, se eliminó como elemento del delito el que las escuelas estuviesen en "funciones escolares" al momento de realizarse cualquiera de las transacciones allí proscritas.([10]) Luego de la enmienda de 1986, el Art. 411A, *supra*, establecía en lo pertinente, lo siguiente:

Artículo 411A.— Introducción de Drogas en Escuelas o Instituciones

Toda persona que, a sabiendas e intencionalmente y en violación a las disposiciones de esta ley, introduzca, distribuya, dispense, administre, posea o transporte para fines de distribución, venda, regale, entregue en cualquier forma, o simplemente posea cualquier sustancia controlada de las incluidas en las Clasificaciones I a V de esta ley, *en una escuela pública o privada, o en sus alrededores*, incurrirá en delito grave y convicta que fuere será sentenciada con el doble de las penas provistas por el Artículo 401(b) ó 404(a) de esta ley por un delito cometido por primera vez, que envuelva la misma sustancia y la misma clasificación.

·        ·        ·        ·        ·        ·        ·        ·

---

([10]) Es interesante notar que en dicha enmienda, en el párrafo que debió corresponder a la definición de los alrededores de un centro, institución o facilidad dedicada a la prevención, diagnóstico, tratamiento y rehabilitación de adictos a drogas narcóticas, el legislador, sorprendentemente, repitió la definición que antes había dado para los alrededores de una escuela.

Por "escuela" se entenderá el edificio principal y toda edificación, anexo, patio, jardín y área de estacionamiento de la escuela y cubrirá las elementales, secundarias (intermedias), superiores, especializadas y a las universidades y colegios para estudios universitarios. Por escuela especializada se entenderán cubiertas, a los fines de este artículo, a las comerciales, vocacionales o de oficio; aquéllas para personas impedidas físicamente, retardadas mentales, sordomudas y ciegas; para personas con limitaciones del habla y en la lectura y cualesquiera otras de naturaleza análoga a las antes mencionadas. *Por "alrededores de una escuela" se entenderá toda vía pública o área recreativa colindante con los límites por cerca o por cualquier otro signo de demarcación, en cualquier dirección.*[11] (Énfasis suplido y escolio omitido.) 1986 Leyes de Puerto Rico 113.

Esta versión del Art. 411A de la Ley de Sustancias Controladas, *supra,* era la que estaba vigente al momento de ocurrir el delito imputado al acusado apelante.

Es en esta redacción que el apelante basa su planteamiento de vaguedad e. imprecisión del estatuto. Alega que la vaguedad surge de la exclusión del requisito de distancia específica dentro de la cual debe ocurrir la transacción de sustancias controladas allí prohibida. Plantea, además, que tal omisión tiene el efecto de violarle su derecho fundamental al debido procedimiento de ley que le garantiza el Art. II, Sec. 7 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1. No le asiste la razón.

---

[11] Esta versión del Art. 411A de la Ley de Sustancias Controladas, *supra,* también disponía lo siguiente:

"Igualmente incurrirá en delito grave toda persona que, a sabiendas e intencionalmente y en violación a las disposiciones de esta ley, distribuya, dispense, administre, posea o transporte para fines de distribución, venda, regale o entregue en cualquier forma cualquier sustancia controlada de las incluidas en las Clasificaciones I a V de esta ley, en un centro, institución o facilidad pública o privada dedicada a la prevención, diagnóstico, tratamiento y rehabilitación de los adictos a drogas narcóticas o de los dependientes a drogas deprimentes o estimulantes, o en sus alrededores. En caso de convicción el infractor será castigado con la penalidad dispuesta en los párrafos primero y segundo de este artículo, para la primera convicción y para casos de reincidencia, respectivamente.

"Por 'alrededores de una escuela' se entenderá toda vía pública o área recreativa colindante con los límites por cerca o por cualquier otro signo de demarcación, en cualquier dirección." 1986 Leyes de Puerto Rico 113-114.

El Art. 411A, *supra*, fue enmendado nuevamente por la Ley Núm. 33 de 27 de mayo de 1988. Dicha enmienda fue "a los fines de precisar la definición de 'alrededores de una escuela' e incorporar la definición de 'alrededores de un centro, institución o facilidad' que es necesaria para configurar el delito allí establecido". Expresión de Propósitos de la Ley Núm. 33 de 27 de mayo de 1988, Leyes de Puerto Rico, pág. 134.

En la Exposición de Motivos de esta ley, el legislador plasmó su interpretación en torno a la constitucionalidad del hasta entonces vigente Art. 411A, *supra*, así como el propósito de la nueva enmienda. En esa tónica señaló:

> La presente medida propone r[e]stablecer el criterio de distancia en la definición del término "alrededores de una escuela" pero se aumenta la distancia a cien (100) metros radiales. *El lenguaje de la disposición vigente resulta vago e impreciso* al disponer que se entenderá por alrededores de una escuela "toda vía pública o área recreativa colindante con los límites por cerca o por cualquier otro signo de demarcación, en cualquier dirección".
>
> Se propone, además, la derogación del último párrafo del Artículo 411A que contiene otra definición de "alrededores de una escuela" muy parecida a la contenida en el párrafo tercero pues crea confusión y no cumple ningún propósito. En su lugar se incorpora la definición del "alrededor de un centro, institución o facilidad" necesaria para configurar el delito de introducción de sustancias controladas en esos lugares de prevención, diagnóstico, tratamiento y rehabilitación de adictos o dependientes a drogas, provisto en el párrafo cuarto del Artículo 411A. (Énfasis suplido.) Expresión de Motivos de la Ley Núm. 33 de 27 de mayo de 1988, Leyes de Puerto Rico, págs. 134–135.

Nada se dispuso en torno a la eliminación del requisito de que, como elemento del delito, las escuelas tuviesen que ser utilizadas para el propósito de su creación. El legislador reiteró así la eliminación de ese requisito.

En reiteradas ocasiones nos hemos expresado en torno a la naturaleza y contenido de la doctrina de vaguedad. Ésta es parte integral de la cláusula del debido procedimiento

de ley y exige que los estatutos penales sean claros y precisos. *Vélez v. Srio. de Justicia*, 115 D.P.R. 533 (1984); *Pueblo v. Mantilla*, 71 D.P.R. 36 (1950); R. Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico*, San Juan, Ed. C. Abo. P.R., 1988, T. II. La intención es que las personas de inteligencia común no estén obligadas a adivinar el significado del estatuto. *Pueblo v. Hernández Colón*, 118 D.P.R. 891 (1987); L.H. Tribe, *American Constitutional Law*, Nueva York, The Foundation Press, 1988, Cap. 12, Sec. 12-31, pág. 1033. En otras palabras, " 'una ley penal viola el requisito constitucional de certidumbre (*definiteness*) cuando no ofrece a una persona de inteligencia ordinaria justa notificación de que su conducta está prohibida por el estatuto. El principio básico es que no se puede hacer responsable criminalmente a ninguna persona por una conducta que ella razonablemente no podía entender [que] estuviese proscrita' ". *Pueblo v. Tribl. Superior*, 81 D.P.R. 763, 787 (1960). Véase, además, *Pueblo v. Tribunal Superior*, 98 D.P.R. 750, 751–752 (1970).

Además de evitar que haya una falta de justa notificación a una persona de inteligencia promedio sobre la existencia de una conducta prohibida, la doctrina de vaguedad persigue salvaguardar otras normas de gran interés público. Entre éstas se encuentran: el que las personas llamadas a poner en vigor la ley no la apliquen de forma arbitraria y discriminatoria, y que la aplicación de la ley no interfiera con el ejercicio y disfrute de algún derecho constitucional fundamental. *Pueblo v. Hernández Colón,* supra, págs. 901–903; *Pacheco Fraticelli v. Cintrón Antonsanti*, 122 D.P.R. 229 (1988).

Es importante recalcar que el mero hecho de que una ley requiera ser interpretada no significa que adolezca de vaguedad. *Vélez v. Srio. de Justicia*, supra; *Vives Vázquez v. Tribunal Superior*, 101 D.P.R. 139 (1973); R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987,

Vol. I, Cap. 72, pág. 462. A este respecto hemos indicado que:

> No debe caerse en la superficialidad de creer que una ley penal es nula por defecto de vaguedad debido a que requiera interpretación. Como señala el maestro Jiménez de Asúa, todas las leyes, aun las "clarísimas", requieren interpretación. "Toda ley, por el hecho de aplicarse es interpretada, ya que al cotejar su contenido con el hecho real se produce un proceso de subsunción, al que contribuyen los órganos interpretativos (a veces el legislador y el científico y siempre el juez), por procedimientos gramaticales y teleológicos, y con resultados declarativos, restrictivos, extensivos o progresivos." En cuanto a las leyes penales "hay que armonizar la estricta legalidad del Derecho punitivo, con la imprescindible interpretación teleológica de las normas jurídicas. Reconociendo que el Derecho penal tiene caracteres de mayor certidumbre y estabilidad que las otras ramas, es imposible creer que la ley penal, *sensu strictu*, se basta del todo a sí misma y que sea suficiente interpretarla a la letra. No es un sistema completo y sin lagunas, de modo que con el simple procedimiento lógico, basado en los preceptos legales escritos, se puedan resolver todas las cuestiones". (Escolios omitidos.) *Pueblo v. Tribl. Superior*, supra, pág. 788.

En su discusión sobre el planteamiento de vaguedad del estatuto, el acusado apelante alega que, debido a que éste contempla una penalidad doble y hasta triplemente mayor en comparación con la comisión de los mismos delitos en otro lugar que no sea una escuela o institución de las allí definidas, o en sus alrededores, es necesario que se establezca claramente y con especificidad la acción que se penaliza. Argumenta que, en el caso de autos, la vaguedad del Art. 411A, *supra*, consiste en no establecer la distancia mínima o medida específica de lo que constituye los "alrededores" de una escuela. Alega que tal omisión ocasiona que esta ley no provea un aviso adecuado del acto que la misma ha declarado como punible, pues la conducta allí prohibida no está claramente definida. No le asiste la razón.

El Art. 411A, *supra*, provee una justa notificación sobre la existencia de la conducta allí prohibida. *Pueblo v. Her-*

*nández Colón*, supra. Una persona de inteligencia común u ordinaria puede entender que efectuar cualquier tipo de transacción de las allí proscritas constituye delito. Igualmente, puede entender el significado del término "alrededores" según utilizado en el estatuto. En el sentido más común de la palabra, "alrededores" denota todo aquello que circunda a una cosa o persona y que se encuentra más o menos cerca de ella. Véase *Diccionario de la Lengua Española*, 20ma ed., Madrid, Ed. Espasa-Calpe, 1984, T. I, pág. 76. El acusado apelante estaba en posición de entender el alcance del significado de la palabra "alrededores" según la misma surge del Art. 411A de la Ley de Sustancias Controladas, *supra*.

Por otro lado, la conducta prohibida por el Art. 411A de la Ley de Sustancias Controladas, *supra*, no es una en la que pueda incurrirse si se efectúa en una zona alejada de la escuela. Al acusado apelante no le cobija derecho constitucional o estatutario alguno que le permita distribuir cocaína o cualquier otro tipo de sustancias controladas en sitio alguno, mucho menos en las escuelas o áreas adyacentes a éstas.

Si adoptamos la posición más favorable al acusado, estamos frente a un caso que, a lo sumo, involucra una ley que requiere ser interpretada. Como indicamos previamente, esto no significa que esta ley adolezca de vaguedad o imprecisión inconstitucional. *Pueblo v. Tribl. Superior*, supra; *Vives Vázquez v. Tribunal Superior*, supra. Es norma reiterada que "[l]os estatutos penales deben interpretarse a la luz de la realidad social de donde surgen y operan. Nuestro deber es interpretar las leyes en el contorno de una situación social y económica actual para resolver controversias humanas de profundas implicaciones personales para los afectados y para la comunidad en general". *Pacheco v. Vargas, Alcaide*, 120 D.P.R. 404, 410 (1988). Si bien es cierto que, conforme al principio de legalidad, los estatutos penales deben ser interpretados res-

trictivamente, Art. 8 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3031, no es menos cierto que esta norma "no exige que a las palabras de un estatuto deba dárseles su significado más limitado o que deba hacerse caso omiso de *la evidente intención del legislador*". (Énfasis suplido.) *Pueblo v. Mantilla*, supra, pág. 44; *Pacheco v. Vargas, Alcaide*, supra; *Pueblo v. Burgos Torres*, 120 D.P.R. 709 (1988).

Si bien el texto del Art. 411A de la Ley de Sustancias Controladas, *supra*, luego de la enmienda de 1986, no definió el concepto "alrededores" con relación a las escuelas, esto se debió a la inadvertencia del legislador. De la expresión de propósitos de la misma ley que introdujo la enmienda de 1986 surge claramente que la intención del legislador fue extender el área considerada como "alrededores" de veinticinco (25) a doscientos (200) metros radiales. Esta enmienda fue motivada por la profunda preocupación de los legisladores y del pueblo en general, ocasionada por los efectos devastadores en nuestros niños y jóvenes del tráfico ilegal de drogas en las escuelas de Puerto Rico.

De la prueba desfilada en instancia, la cual fue creída por el juzgador de los hechos, se desprende que el acusado apelante —al momento de efectuarse la transacción de sustancias controladas por la cual se le acusó— estaba ubicado frente a los terrenos de la escuela. No tenemos la menor duda de que el apelante sabía, o debió saber, que se encontraba efectuando una transacción ilegal de sustancias controladas en los *alrededores* de una escuela, actividad proscrita por el Art. 411A de la Ley de Sustancias Controladas, *supra*. Tampoco dudamos, y así surge claramente de la prueba vertida, que el acusado estaba ubicado, con relación a la escuela, a una distancia mucho menor que la que el legislador tuvo intención de establecer mediante la enmienda de 1986.

Para efectos de lo establecido en el Art. 411A de la Ley de Sustancias Controladas, *supra*, y de acuerdo con los he-

chos particulares del caso de autos, el acusado apelante recibió justa notificación de la actividad proscrita por dicho estatuto. *Pueblo v. Hernández Colón*, supra.

Al concluir que el Art. 411A de la Ley de Sustancias Controladas, *supra* —y vigente al momento de ocurrir los hechos del caso ante nos— no adolece del defecto de vaguedad, diferimos de la interpretación del legislador con relación al mismo estatuto al éste expresar en la Exposición de Motivos de la Ley Núm. 33, *supra*, que "[e]l lenguaje de la disposición vigente resulta vago e impreciso ...".

Sin embargo, con todo el respeto—e independientemente de éste— que nos merece la interpretación del Poder Legislativo sobre su constitucionalidad o la de algún otro estatuto en particular, es a los tribunales a quienes corresponde la función indelegable de ser los intérpretes finales de la Constitución de Puerto Rico, y al ejercer esta función no estamos vinculados ni obligados a coincidir con las interpretaciones hechas por otros poderes del Gobierno. Es, enfáticamente, atributo y deber de la Rama Judicial la determinación de lo que significa la ley. Es a los tribunales a quienes les toca interpretar las leyes y la Constitución. *Santa Aponte v. Srio. del Senado*, 105 D.P.R. 750, 760 (1977). El Art. 411A, *supra*, no adolece de vaguedad. Al apelante no se le violó su derecho constitucional al debido procedimiento de ley.

### III

*El requisito de que la escuela se encuentre en funciones como elemento del delito y el punto a partir del cual comenzara a medirse para establecer qué constituye los "alrededores" de una escuela*

El apelante alega que, a pesar de que se le imputó haber vendido sustancias controladas en los alrededores de una escuela pública, la prueba desfilada no fue suficiente para

establecer que dicha escuela se encontraba en funciones ni que la transacción ocurrió en sus alrededores. Planteó, además, que de la prueba desfilada tampoco surge que el lugar alrededor del cual ocurrió la transacción fuese efectivamente una escuela, pues el Fiscal no presentó funcionario alguno que declarase en torno a su existencia y operación. Igualmente argumentó que a la defensa no se le permitió pasar prueba sobre la distancia que había entre el lugar donde ocurrió la transacción de sustancias controladas y la escuela.

Según previamente indicáramos, cuando se introdujo mediante enmienda el Art. 411A a la Ley de Sustancias Controladas, *supra*, el legislador incluyó como elemento del delito el requisito de que las escuelas a que allí se hace referencia estuviesen en funciones. Sin embargo, mediante la enmienda introducida al Art. 411A en 1986, cuyo texto así enmendado estaba vigente al momento de ocurrir la transacción de sustancias controladas que hoy nos ocupa, el requisito de que la escuela estuviese en funciones fue eliminado.[12] Este cambio en la redacción del Art. 411A, así como otros cambios hechos por virtud de la misma enmienda, fueron producto de la reacción legislativa ante la preocupante situación del tráfico de sustancias controladas en nuestras escuelas, que destruye la vida de niños y jóvenes.

A partir de la vigencia de la enmienda de 1986 no era necesario pasar prueba referente a que las escuelas estuviesen en funciones. Desde ese momento dejó de ser un elemento indispensable para la configuración del delito.

Así las cosas, no estaba obligado el Ministerio Público a pasar prueba tendente a demostrar que al momento de

---

[12] Esta acción fue reiterada en la enmienda de 1988. Allí, al justificar la eliminación del requisito de que las escuelas se utilizasen para propósitos docentes, se señaló que se hizo con el fin de "facilitar la consecución de [los] objetivos" de la ley. Exposición de Motivos de la Ley Núm. 33 de 27 de mayo de 1988, Leyes de Puerto Rico, pág. 134.

efectuarse la transacción por la cual se acusó al apelante, la escuela en cuyos alrededores ocurrió estaba en funciones docentes. Por lo tanto, no era necesario que presentara como testigo a funcionario escolar alguno para que declarara en torno a este asunto.[13]

Con relación al planteamiento de la distancia habida entre el lugar de la transacción y la escuela, el apelante nos trae dos (2) elementos que deben ser considerados: (1) el impedimento, por parte de instancia, a que el apelante pasara prueba para demostrar que la transacción no ocurrió en los alrededores de la escuela y (2) la insuficiencia de la prueba de cargo para sostener el delito imputado. Lo relativo a la suficiencia de la prueba lo discutiremos en la Parte IV de esta opinión.

De la exposición narrativa de la prueba surge que, durante el contrainterrogatorio, la defensa intentó lograr una declaración del agente encubierto en torno a *la distancia existente entre el lugar en que éste estacionó el vehículo y la estructura física de la escuela.* La pregunta hecha con este propósito fue objetada por el Fiscal por entender que no era pertinente al asunto en controversia. El juez de instancia declaró con lugar la objeción.

Entendemos que la pregunta, tomada tal y como fue formulada, no era pertinente. *Cf.* Regla 18(b) de Evidencia, 32 L.P.R.A. Ap. IV. El término "alrededores de la escuela", según surge del propio Art. 411A de la Ley de Sustancias Controladas, *supra*, y de acuerdo con lo establecido en la Parte II de esta opinión, se interpretará tomando en consideración el concepto general de "escuela" que aparece en la definición dada por el mencionado Art. 411A, *supra*. Allí se indicó que por "escuela" se entendería no sólo el edificio principal, o lo que el apelante llama "estructura física",

---

[13] En cuanto a la alegación sobre si existía o no una escuela, además de la credibilidad que le mereció al juez de instancia la declaración del agente respecto a este particular, el tribunal muy bien pudo tomar conocimiento judicial de su existencia. *Asoc. de Periodistas v. González*, 127 D.P.R. 704 (1991).

sino además "toda edificación, anexo, patio, jardín y área de estacionamiento de la escuela ...". 1986 Leyes de Puerto Rico 113. El término "alrededores de una escuela" se definió como "toda vía pública o área recreativa *colindante con los límites por cerca o por cualquier otro signo de demarcación*, en cualquier dirección". (Énfasis suplido.) Íd.

A los efectos de rebatir la prueba de cargo que estableció que el acusado apelante estaba en los "alrededores" de la escuela, no era pertinente pasar prueba tendente a establecer la distancia habida entre el lugar donde el agente encubierto estacionó el vehículo o donde alegadamente ocurrió la transacción y la estructura física o edificio principal de la escuela. La distancia que debió calcularse era a partir del área general definida por el legislador como escuela, esto es, "toda edificación, anexo, patio, jardín y área de estacionamiento ...". 1986 Leyes de Puerto Rico 113. Lo que constituye los "alrededores" de una escuela se medirá tomando como punto de partida los "límites por cerca o por cualquier otro signo de demarcación" (íd.), y no únicamente con relación al edificio principal. Actuó correctamente el tribunal de instancia al no permitir que la pregunta así formulada al testigo fuese contestada. Además, de la prueba presentada surge con meridiana claridad que la transacción de sustancias controladas se efectuó en los "alrededores" de la escuela, según este concepto es entendido por una persona de inteligencia promedio. Este error no se cometió.

IV

*La suficiencia de la prueba y el testimonio estereotipado*

En el segundo señalamiento de error, el apelante también atacó la suficiencia de la prueba de cargo para establecer que la transacción ocurrió en los alrededores de una escuela, así como para establecer que efectivamente se tra-

taba de una escuela y que la prueba de cargo no fue sufi-
ciente para probar que el acusado era culpable más allá de
duda razonable.

De la exposición narrativa de la prueba surge que en su
declaración el agente encubierto describió la ubicación y el
nombre de la escuela, para lo cual ofreció datos específicos.
Describió el lugar frente al cual ocurrió el delito como la
Escuela Elemental Camarones IV, sita en el barrio Cama-
rones del pueblo de Guaynabo. Señaló, además, que la
transacción se efectuó "frente a los terrenos de la escuela" e
indicó que el acusado apelante "estaba parado al frente de
la escuela, frente donde queda el portón". Esta fue la
prueba presentada. La misma fue aquilatada y creída por
el juzgador de instancia.

Con relación al planteamiento de insuficiencia de la
prueba para probar la culpabilidad del acusado más allá de
duda razonable, es menester señalar que el análisis que de
la exposición narrativa de la prueba hemos hecho nos con-
vence de que la prueba fue suficiente en derecho para sos-
tener la convicción del acusado. *Pueblo v. Bigio Pastrana*,
116 D.P.R. 748 (1985).

Así las cosas, el acusado apelante no nos ha convencido
de que haya necesidad de intervenir con la función aquila-
tadora de credibilidad del juzgador de instancia. *Pueblo v.
Suárez Fernández*, 116 D.P.R. 842 (1986). Por lo tanto, de-
bemos reiterar la norma establecida a los efectos de que
"un tribunal apelativo no debe revocar una convicción a
base de un planteamiento de insuficiencia de prueba, que
se reduce a la credibilidad de testigos, en ausencia de indi-
cios de prejuicio, parcialidad o error manifiesto. El juzga-
dor de instancia está en mejor posición al respecto". *Pueblo
v. Hernández Mercado*, 126 D.P.R. 427 (1990); *Pueblo v.
Torres Ramos*, 121 D.P.R. 747 (1988); *Pueblo v. Rivero,
Lugo y Almodóvar*, 121 D.P.R. 454 (1988); *Pueblo v. Mora-
les Suárez*, 117 D.P.R. 497 (1986); *Pueblo v. Lebrón Gonzá-*

*lez*, 113 D.P.R. 81 (1982); *Pueblo v. Díaz Ríos*, 107 D.P.R. 140 (1978); *Pueblo v. Cruz Negrón*, 104 D.P.R. 881 (1976).

En su alegato ante nos, el acusado apelante señaló que se le declaró culpable aun cuando existía duda razonable de su participación en los hechos delictivos pues, según alega, la prueba de cargo no rebatió la presunción de inocencia.[14] Planteó, además, que el testimonio del agente encubierto no fue suficiente para establecer su culpabilidad más allá de duda razonable, pues se trata de un testimonio descarnado, estereotipado, increíble y contradictorio. Ambos errores fueron discutidos conjuntamente.

Con relación a lo alegado en torno al planteamiento de duda razonable, cuya discusión se hizo extensiva por el acusado al señalamiento de testimonio estereotipado, el apelante se limitó a argumentar que el testimonio del agente encubierto Sánchez Hernández era uno "descarnado" que "no se ajusta a la realidad, ya que físicamente es imposible salir desde el Departamento de Justicia en San Juan, a las 4:52 P.M., hacer todas las cosas que dice el agente que hizo, y hacer luego una supuesta transacción de droga a las 6:10 de la tarde con el convicto-apelante". De entrada es preciso aclarar que, según surge de la exposición narrativa de la prueba, la evidencia desfilada fue a los efectos de que la transacción se efectuó a las 6:30 de la

---

[14] Al comenzar la discusión del señalamiento de error, referente a la existencia de duda razonable sobre su participación en los hechos imputados, el apelante nos indica que en el cuerpo de la denuncia presentada en su contra, el Ministerio Fiscal hizo referencia a que en una acusación previa el apelante se había acogido a los beneficios de TASC. Plantea que dicha anotación fue una acción indebida del Fiscal, con el único propósito de alertar y prejuiciar al tribunal en contra del acusado.

Coincidimos con el acusado apelante en cuanto a que esta acción del Fiscal es indebida. Sin embargo, además de que el apelante trae este planteamiento ahora por primera vez, no debemos olvidar que este caso fue ventilado por tribunal de derecho y no ante un Jurado. El apelante no nos ha convencido de que la decisión de instancia estuviese motivada por prejuicio alguno causado por la anotación indebida del Fiscal. Así las cosas, partimos de la presunción de que el juez es un técnico conocedor del Derecho capaz de excluir en su proceso decisorio toda materia ajena e impertinente al asunto que ante él se ventila.

tarde y no a las 6:10 P.M. como alega el apelante. No resulta, pues, físicamente imposible realizar los actos narrados por el agente encubierto.

Pasemos ahora a analizar el planteamiento de que se trataba de un testimonio estereotipado. Hemos definido *testimonio estereotipado* como "aquel que se reduce a establecer los elementos mínimos necesarios para sostener un delito sin incluir detalles imprescindibles para reforzarlo".([15]) *Pueblo v. Rivera Rodríguez*, 123 D.P.R. 467, 480 (1989). Véanse: *Pueblo v. Sanabria Pérez*, 113 D.P.R. 694 (1983); *Pueblo v. Almodóvar*, 109 D.P.R. 117 (1979); *Pueblo v. González del Valle*, 102 D.P.R. 374 (1974); *Pueblo v. Rosario Torres*, 101 D.P.R. 840 (1973); *Pueblo v. Soto Zaragoza*, 94 D.P.R. 350 (1967); *Pueblo v. Ayala Ruiz*, 93 D.P.R. 704 (1966).

Examinada con detenimiento la exposición narrativa de la prueba, concluimos que no estamos ante un caso de testimonio estereotipado. La declaración del agente encubierto Sánchez Hernández no puede catalogarse como tes-

---

([15]) Debido a los peligros que entraña el testimonio estereotipado, hemos establecido unas pautas o criterios que han de ser considerados para evaluar su credibilidad:

" 'En primer término, reiteramos que todo testimonio estereotipado debe escudriñarse con especial rigor.

" 'Segundo, tanto los casos de la evidencia-abandonada-o-lanzada-al-suelo como los casos del acto-ilegal-a-plena-vista deben, en ausencia de otras consideraciones, inducir sospecha de la posible existencia de testimonio estereotipado.

" 'Cuarto, el testimonio estereotipado puede perder su condición de tal si, yendo más allá de los datos indispensables para probar los requisitos mínimos de un delito, se le rodea de las circunstancias en que funciona el agente, el término de su investigación, los resultados obtenidos fuera del caso en trámites y otros detalles. Se exhorta en este sentido a recordar los factores mencionados sobre este particular en *Pueblo v. Ayala Ruiz*, supra y casos subsiguientes.

" 'Quinto, por el contrario, la presencia de contradicciones, lagunas o vaguedades en el testimonio debe tender a reforzar el recelo con que hay que escuchar esta clase de declaraciones.

" 'Sexto, no debe olvidarse que el peso de la prueba de librar el testimonio estereotipado de sospecha recae en el fiscal. Tal peso no se descarga con la extracción del testimonio flaco y descarnado a que se refirió *Ayala Ruiz*. *Pueblo v. González del Valle*, [102 D.P.R. 374, 378 (1974)].' " *Pueblo v. Rivera Rodríguez*, 123 D.P.R. 467, 480–481 (1989).

timonio irreal o improbable. *Pueblo v. González del Valle*, supra. Tampoco se trata de un testimonio descarnado. La declaración de dicho agente no se limitó a los particulares mínimos necesarios para establecer la infracción, *Pueblo v. Ayala Ruiz*, supra, sino que suministró información adicional que proveyó su confiabilidad. *Pueblo v. Rivera Rodríguez*, supra. En resumen, al tomar en consideración todos los pormenores del caso de autos, concluimos que el testimonio del agente encubierto no puede ser calificado de estereotipado, irreal o improbable. Este error no fue cometido.

Por todo lo antes expuesto, concurrimos con la sentencia que hoy emite este Tribunal.

— O —

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton, a la cual se une el Juez Presidente Señor Andréu García.

Por entender que la definición de "alrededores de una escuela" en la Ley Núm. 40 de 5 de junio de 1986 (24 L.P.R.A. sec. 411A), es vaga e imprecisa y viola el principio de legalidad del ordenamiento penal, revocaríamos la sentencia apelada y en su lugar declararíamos al Sr. Félix J. Cabello Mulero culpable del delito de infracción al Art. 401(a) de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2401. Disentimos.

I

El 14 de agosto de 1987, el Sr. Félix Cabello Mulero fue acusado de violar el Art. 411A de la Ley de Sustancias Controladas de Puerto Rico, *supra*, que prohíbe la distribución y venta de sustancias controladas en los alrededores de una escuela. En la acusación se imputó que para el 12 de

diciembre de 1986 y frente a una escuela en el Bo. Camarones de Guaynabo, el apelante ilegal, voluntaria, maliciosa y criminalmente distribuyó la sustancia controlada conocida como "cocaína". Por estos hechos fue juzgado en el Tribunal Superior, Sala de Bayamón.

La prueba demostró que a eso de las 6:30 de la tarde Cabello Mulero realizó frente a una escuela en el Bo. Camarones de Guaynabo una transacción de drogas con un confidente y un encubierto de la Policía. Surge de la Exposición Narrativa de la Prueba, que el sitio donde se llevó a cabo la transacción fue en la entrada de la escuela que estaba localizada en los altos de una loma. Exposición Narrativa de la Prueba, pág. 9. Cuando la defensa intentó establecer la distancia entre la escuela y el lugar de los hechos, el juzgador de los hechos intervino y no le dejó preguntar al respecto, porque entendió que la distancia no era un criterio pertinente. Véase Exposición Narrativa de la Prueba, págs. 9 y 10.

El 2 de diciembre de 1988, siendo juzgado por tribunal de derecho, se encontró culpable al acusado del delito imputado y se le condenó a veinte (20) años de reclusión. En su apelación, Cabello Mulero sostiene que el tribunal de instancia cometió los errores siguientes:

A. PRIMER ERROR:
   Cometió grave error el Honorable Juez al declarar culpable al acusado, ya que existía duda razonable sobre su participación en los alegados hechos delictivos y la prueba de cargo no rebatió la presunción de inocencia.
B. SEGUNDO ERROR:
   La acusación que se hizo contra el convicto-apelante, fue de haber vendido sustancias controladas en los predios de una escuela pública y la prueba desfilada no fue suficiente para establecer que dicha escuela se encontraba en funciones, que la supuesta venta había sido en los predios de la escuela, ya que no se le permitió a la defensa pasar prueba sobre tales extremos.
C. TERCER ERROR:

Que durante el proceso del juicio, al convicto-apelante se le violó el debido proceso de ley.

D. CUARTO ERROR:

El testimonio del agente encubierto fue uno descarnado, e[s]ter[e]otipado e increíble que entró en serias contradicciones y no rebasó los parámetros para establecer un caso más allá de la duda razonable. Alegato del acusado apelante, págs. 2–3.

La apelación nos permite examinar si al momento de los hechos el Art. 411A de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, según enmendada, 24 L.P.R.A. sec. 2411a, adolecía de vaguedad y violaba la cláusula del debido proceso de ley.

## II

Al resolver la controversia de esta apelación partimos de la premisa de que un acto no es punible a menos que "no esté expresamente definido por la ley como delito ...". 33 L.P.R.A. sec. 3031. Este principio rector del derecho penal recogido en el Art. 8 del Código Penal de 1974 (33 L.P.R.A. sec. 3031)[1] consagra la máxima latina *nullum crimen, nullum poena, sine lege previae*. Este principio de antigua estirpe constituye un elemento cardinal en el ordenamiento penal moderno. Conforme a sus postulados, al interpretar un estatuto "la claridad y precisión ... es condición de su validez". *Pacheco v. Vargas, Alcaide*, 120 D.P.R. 404 (1988).

Tanto esta norma como el mandato constitucional de que ninguna persona será privada de su libertad sin el debido proceso de ley, proscriben las leyes vagas o ambiguas. En *Pueblo v. Santiago Vázquez*, 95 D.P.R. 593, 595 (1967), sostuvimos que "allí donde el estatuto penal es de tal naturaleza indefinido e impreciso que no informa

---

[1] El Art. 8 del Código Penal de 1974 (33 L.P.R.A. sec. 3031) dispone:

"No se instará acción penal contra persona alguna por un hecho que no esté expresamente definido por la ley como delito, ni se impondrán penas o medidas de seguridad que la ley no hubiere previamente establecido.

"No se podrán crear por analogía delitos, penas, ni medidas de seguridad."

adecuadamente al ciudadano que su acto estaba prohibido y penado" falta al debido proceso de ley garantizado por el Art. II, Sec. 7 de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1.

Al amparo de este precepto, una ley es nula por vaguedad si sus prohibiciones no están claramente definidas. *Vives Vázquez v. Tribunal Superior*, 101 D.P.R. 139 (1973). Ante un reclamo de ambigüedad y violación del debido proceso de ley, recientemente concluimos que una ley será declarada nula si: (1) una persona de inteligencia promedio no queda debidamente advertida del acto u omisión que el estatuto pretende prohibir y penalizar; (2) se presta a la aplicación arbitraria y discriminatoria e interfiere con el ejercicio de derechos fundamentales garantizados por la Constitución. *Pacheco Fraticelli v. Cintrón Antonsanti*, 122 D.P.R. 229 (1988). Véase, además, *Pueblo v. Hernández Colón*, 118 D.P.R. 891, 906 (1987), opinión disidente.

En esencia, allí reiteramos que el concepto de ambigüedad toma como punto de partida la percepción y entendimiento que una persona de inteligencia promedio puede hacer de una ley. Una ley es nula por razón de vaguedad si *personas de inteligencia común se ven obligadas a adivinar su significado* y, a su vez, resulta difícil poder establecer la forma y manera de su aplicación, conllevando una posible aplicación arbitraria. *Pueblo v. Mantilla*, 71 D.P.R. 36 (1950); *Vélez v. Srio. de Justicia*, 115 D.P.R. 533, 544 (1984).

Por otro lado, el hecho de que se tenga que ejercer nuestra función de interpretar la ley no implica que la ley adolece de vaguedad. *Pueblo v. Tribl. Superior*, 81 D.P.R. 763 (1960). No obstante, al interpretar un estatuto penal, el principio de legalidad nos impone el deber de interpretar estas leyes restrictivamente. *Pueblo v. Ríos Nogueras*, 114 D.P.R. 256 (1983); *Pueblo v. Uriel Álvarez*, 112 D.P.R. 312 (1982).

Con la aprobación del Código Penal de 1902, se dispuso

que la interpretación de la norma penal debía seguir el estricto sentido de los términos de la ley.[2] Véanse: *El Pueblo v. Benítez et al.*, 19 D.P.R. 246, 258 (1913); *El Pueblo v. Padilla*, 20 D.P.R. 276, 280 (1914). Incluso, estos pronunciamientos requerirían que toda interpretación restrictiva debía exigir que en caso de duda se favoreciera al acusado. *Mari Bras v. Alcaide*, 100 D.P.R. 506 (1972); *Pueblo v. Tribunal Superior*, 101 D.P.R. 439 (1973). No obstante, la interpretación del estatuto penal debe ser razonable y una aplicación literal suya, que resulta en consecuencias absurdas, debe ser evitada. La interpretación restrictiva no exige que a las palabras debe dárseles su significado más limitado o que se deba hacer caso omiso de la evidente intención del legislador. *Pacheco v. Vargas, Alcaide*, supra; *Pueblo v. Burgos Torres*, 120 D.P.R. 709 (1988).

Al interpretar una ley penal especial como la del caso de autos también debemos hacerlo de acuerdo con las normas de hermenéutica expuestas en los Art. 5,[3] 6[4] y 7 del Código Penal. En particular, debemos interpretar las palabras o frases según "su contexto, su uso común y corriente, y el tiempo y género de las voces". D. Nevares-Muñiz, *Derecho Penal Puertorriqueño: Parte General*, Hato Rey, Inst. Desarrollo del Derecho, 1983, pág. 106.

---

[2] El derogado Art. 3 del Código Penal de 1902 disponía:

"Art. 3. —Todas las disposiciones y artículos de este Código deberán interpretarse según el recto sentido de sus términos, [a] fin de que llene su objeto y facilite la administración de [la] justicia." *Estatutos revisados y códigos de Puerto Rico*, San Juan, Imp. Boletín Mercantil, 1902, Art. 3, pág. 521.

[3] El Código Penal de 1974, en su Art. 5, dispone, entre otras cosas, que:

"Las disposiciones de la Parte General del presente Código se aplicarán también a los hechos previstos por las leyes penales especiales." 1974 Leyes de Puerto Rico 450.

[4] El Art. 6 dispone:

"Las palabras y frases se interpretarán según el contexto y el significado sancionado por el uso común y corriente.

"Las voces usadas en este Código en el tiempo presente incluyen también el futuro; las usadas en el género masculino incluyen el femenino y el neutro, salvo los casos en que tal interpretación resultare absurda; el número singular incluye el plural y el plural incluye el singular." 1974 Leyes de Puerto Rico 450–451.

Por último, cuando un estatuto es susceptible de dos interpretaciones, una de las cuales lo hará constitucional y la otra inconstitucional, es el deber de las cortes adoptar aquella interpretación que, sin violentar el significado razonable del lenguaje, lo haga constitucional. Véase *Pueblo v. Mantilla*, supra. Claro, hay que tomar en consideración que debemos abstenernos de formular interpretaciones constitucionales a menos que no pueda resolverse la controversia por otros razonamientos. Véase *Martínez v. Tribunal Superior*, 81 D.P.R. 945 (1960). Tampoco resulta apropiado, cuando un estatuto es claro y su interpretación correcta se desprende del significado común y corriente de sus palabras, intercalar vocablos ni suplir omisiones al interpretarlo. *Meléndez v. Tribunal Superior*, 90 D.P.R. 656, 662 (1964).

Luego de este breve repaso de las reglas de hermenéutica penal, nos compete pronunciarnos sobre la validez del Art. 411A de la Ley de Sustancias Controladas de Puerto Rico, según enmendada, *supra*, vigente al momento de los hechos.

## III

En un esfuerzo por reglamentar la fabricación, distribución y dispensación de las sustancias controladas en Puerto Rico y establecer un cuerpo de ley con las debidas penas, se aprobó la ley Núm. 4 de 23 de junio de 1971, conocida como la "Ley de Sustancias Controladas de Puerto Rico". En dicha ocasión el legislador tenía un interés legítimo de resolver el problema del trasiego de drogas. Sin embargo, la ley era silente en cuanto al creciente tráfico de drogas que existía en las escuelas públicas y privadas del país. Fue para mediados de la década del '70 que se incorporó el Art. 411A, *supra*, que específicamente trataba el problema de la venta de drogas en los planteles escolares y sus alrededores.

` Esta ley, en lo que nos concierne, disponía:

Artículo 411A.—
Toda persona que, a sabiendas e intencionalmente y en violación a las disposiciones de esta ley, introduzca, distribuya, dispense, administre, posea o transporte para fines de distribución, venda, regale o entregue en cualquier forma, cualquier sustancia controlada de las incluidas en las Clasificaciones I a V de esta ley, en una escuela pública o privada, o en sus alrededores y mientras se encuentren en funciones escolares, incurrirá en delito grave y convicta que fuere será sentenciada con el doble de las penas provistas por el Artículo 401(b) de esta ley por un delito cometido por primera vez, que envuelva la misma sustancia y la misma clasificación.

Por "escuela" se entenderá el edificio principal y toda edificación, anexo, patio, jardín y área de estacionamiento de la escuela y cubrirá las elementales, secundarias (intermedias), superiores, especializadas y a las universidades y colegios para estudios universitarios. Por escuela especializada se entenderán cubiertas, a los fines de este artículo, a las comerciales, vocacionales o de oficios; aquellas para personas impedidas físicamente, retardadas mentales, sordomudas y ciegas; para personas con limitaciones del habla y en la lectura y cualesquiera otras de naturaleza análoga a las antes mencionadas. *Por los "alrededores de una escuela" se entenderá cubierta un área hasta una distancia de veinticinco (25) metros a contarse desde los límites de la escuela, según indicados los límites por cerca o por cualquier otro signo de demarcación, en cualquier dirección.* (Énfasis nuestro y escolio omitido.) 1975 Leyes de Puerto Rico 882–883.

Sin embargo, el estatuto sufrió un cambio fundamental con la aprobación de la Ley Núm. 40 de 5 de junio de 1986 (24 L.P.R.A. sec. 2411a). Ese año, el legislador, preocupado por la seguridad de la población escolar, entendió que era preciso enmendar el Art. 411A de la Ley de Sustancias Controladas de Puerto Rico, en dos (2) extremos. El primero, aumentar el área incluida en los alrededores de las escuelas a doscientos (200) metros (anteriormente veinticinco (25) metros) y, el segundo, excluir a los que cometen estos delitos de los beneficios de la sentencia suspendida y

libertad a prueba. Art. 414 de la Ley Núm. 4 de 23 de junio de 1971 (24 L.P.R.A. sec. 2411a).

Aunque de la exposición de motivos surge que la intención legislativa fue ampliar el área cubierta hasta una distancia de doscientos (200) metros radiales, *la Asamblea Legislativa omitió incluir un artículo a esos efectos en el texto de la ley* que fue aprobada. Como resultado de esta omisión, el Art. 411A, según enmendado, *supra*, definió "alrededores de la escuela" de la siguiente manera:

> Por "alrededores de una escuela" se entenderá toda vía pública o área recreativa colindante con los límites por cerca o por cualquier otro signo de demarcación, en cualquier dirección. 1986 Leyes de Puerto Rico 113.

Al percatarse de la omisión incurrida al promulgar la Ley Núm. 40, *supra*, la Asamblea Legislativa, mediante la Ley Núm. 33 de 27 de marzo de 1988 (24 L.P.R.A. sec. 2411a), enmendó el estatuto a los únicos fines de "restablecer el criterio distancia" en la definición de "alrededores de una escuela".([5]) Al promulgar esta nueva ley, la Asamblea Legislativa expresamente reconoció que la definición de "alrededores" de la Ley Núm. 40, *supra, era vaga e imprecisa* y que era necesario establecer un límite de cien (100) metros radiales al área cubierta por esta prohibición. Véase Exposición de Motivos de la Ley Núm. 33 de 27 de mayo de 1988, Leyes de Puerto Rico, págs. 134–135.([6])

En vista de que la Asamblea Legislativa expresamente

---

([5]) La Ley Núm. 33 de 27 de mayo de 1988 (24 L.P.R.A. sec. 2411a) definió "alrededores de una escuela" de la siguiente manera:

"Por 'alrededores de una escuela' se entenderá cubierta un área de hasta cien (100) metros radiales a contarse desde los límites de la escuela, según indicados estos límites por cerca o por cualquier otro signo de demarcación."

([6]) Véase la Exposición de Motivos de la Ley Núm. 33, *supra*, 1988 Leyes de Puerto Rico 134–135; además, el informe conjunto de 2 de mayo de 1988, a la Cámara de Representantes por la Comisión de lo Jurídico Penal y la Comisión de Instrucción y Cultura. Como también el informe conjunto de 29 de marzo de 1988 al Senado, por la Comisión de Instrucción y la Comisión de lo Jurídico. Ambos informes coinciden en la vaguedad e imprecisión del estatuto.

reconoció que su omisión tuvo el efecto de causar confusión sobre el alcance de la prohibición del Art. 411A, según enmendado, *supra*, resulta realmente sorprendente la sentencia emitida por este Tribunal. Las enmiendas introducidas en el estatuto en el 1988 constituyeron una aceptación de la Asamblea Legislativa de que el estatuto era vago y confuso y, por ende, violaba el principio de legalidad. No obstante esta aceptación, una mayoría de los compañeros de este Tribunal refrendan el dictamen apelado y desde este estrado apelativo la opinión concurrente de la Juez Asociada Señora Naveira de Rodón pretende corregir la omisión legislativa. No podemos refrendar este acto de legislación judicial *en asuntos en que se debate la libertad de una persona*.

## IV

Motivado porque la ley expuesta anteriormente era la vigente al momento de suceder los hechos del caso de epígrafe, en su apelación, Cabello Mulero sostiene que "la definición 'alrededores de una escuela' contenida en la Ley Núm. 40, es tan amplia en su alcance, tan indefinida y tan vaga que permitiría la convicción de un acusado de vender sustancias controladas a cientos de metros de una escuela". Alegato del acusado apelante, pág. 11. Aduce que esto permitiría aplicar la ley de "igual manera a una venta de drogas realizada a diez (10) metros de la entrada de una escuela que a una efectuada a mil (1,000) metros de una escuela, ya que dentro del lenguaje de la ley, aun esto podría ser considerado un área 'alrededor de la escuela'". Íd., págs. 11–12.

Fundamentándose en su conclusión en cuanto a que la distancia no era importante en la aplicación de la ley, el foro de instancia no permitió prueba sobre estos extremos. No obstante, la opinión concurrente de la compañera Juez Asociada Señora Naveira de Rodón reconoce que la distan-

cia es un elemento importante en esta ley especial, y a pesar de que no se presentó prueba sobre este aspecto, confirma la sentencia apelada. Su opinión concurrente concluye que el Art. 411A, según enmendado, *supra*, provee una justa notificación sobre la conducta allí penada. Aduce que una persona de inteligencia común u ordinaria puede entender y comprender el significado del término "alrededores" y concluye que la ley prohíbe la venta y distribución de sustancias controladas "si se efectúa en una zona alejada de la escuela". La sentencia emitida por una mayoría del Tribunal concluye que no se cometieron los errores señalados y refrenda (implícitamente) la tesis de la opinión concurrente de la Juez Asociada Señora Naveira de Rodón.

Ante el reclamo de vaguedad en la redacción del artículo, la opinión concurrente de la Juez Asociada Señora Naveira de Rodón afirma que como el acusado es una persona de inteligencia común, podía "entender el significado del término alrededores" según utilizado en el estatuto. Para fundamentar su hipótesis se recurre al Diccionario de la Lengua Española y concluye que el vocablo denota "todo aquello ... que se encuentra *más* o *menos* cerca de ella". (Énfasis suplido.) Opinión concurrente de la Juez Asociada Señora Naveira de Rodón, pág. 197.

La acepción citada del Diccionario de la Lengua Española está viciada de la misma vaguedad e imprecisión que el estatuto. Como el vocablo "alrededor" es un adverbio, "que se emplea generalmente con 'de' como preposición para expresar la situación de algo que rodea a la cosa de que se trata", A. Moliner, *Diccionario de Uso del Español*, Madrid, Ed. Gredos, 1986, pág. 148, éste tiene múltiples usos y se utiliza generalmente cuando no se puede precisar la distancia del objeto primario.

Recordemos también que interpretamos un artículo penal que contiene en su propio texto la definición de "alrededores de una escuela". Esto es, no tenemos que recurrir a otro artículo para conseguir su definición. Siendo esto así,

¿por qué la opinión concurrente de la Juez Asociada Señora Naveira de Rodón recurre al diccionario de la Real Academia Española para definir "alrededores"? ¿No es esto una admisión de que el estatuto es vago e impreciso? ¿No es esto la mejor prueba de que su opinión no está utilizando el criterio rector de la persona de inteligencia común?

De lo anterior se desprende que el estatuto no tiene la claridad requerida para que un ciudadano de inteligencia común pueda entender los límites permisibles de su conducta. Precisamente por esta imprecisión es que dentro de este Tribunal tenemos opiniones contrarias sobre el alcance del delito y la Juez Asociada Señora Naveira de Rodón se ve obligada a establecer unos límites recurriendo a la intención legislativa. ¿No es esto el mejor ejemplo de que el Art. 411A, según enmendado, *supra*, viola el principio de legalidad y la doctrina del debido proceso de ley?

Conscientes de la imprecisión del lenguaje estatutario, la opinión concurrente de la Juez Asociada Señora Naveira de Rodón trata de superar los problemas constitucionales afirmando que "la conducta prohibida ... no es una en la que pueda incurrirse si se efectúa en una zona alejada de la escuela". Opinión concurrente de la Juez Asociada Señora Naveira de Rodón, pág. 179. La solución concebida es tan ambigua como el concepto original. ¿Significa esto que en el futuro tendremos que interpretar qué es una zona alejada?

La solución de la opinión concurrente de la Juez Asociada Señora Naveira de Rodón no es lo suficientemente precisa para cumplir con el principio de legalidad y con las garantías del debido proceso de ley. Correspondía a la Asamblea Legislativa la tarea de enmendar el estatuto y establecer el área radial específica que fuese claramente entendible para el hombre de inteligencia promedio.

Por la razones expuestas anteriormente, no podemos permitir que la interpretación judicial castigue de manera injusta a un acusado por violar una ley, que el propio legislador aceptó que era "vaga e imprecisa". Esto constituye un

acto de legislación judicial contraria a nuestro ordenamiento constitucional y a los principios más fundamentales del derecho penal que no podemos endosar. Por estas razones, disentimos de la sentencia del Tribunal.

No obstante, en vista de que la prueba desfilada demostró más allá de duda razonable que el apelante voluntaria, maliciosa y con intención criminal distribuyó cocaína a un agente encubierto del orden público, declararíamos a Cabello Mulero culpable del delito de infracción al Art. 401(a)(⁷) de la Ley de Sustancias Controladas de Puerto Rico, *supra*. Por ende, devolveríamos el caso al foro de instancia para que dicte la sentencia correspondiente.

---

(⁷) El Art. 401(a) de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2401, dispone en lo pertinente:

"(a) Excepto en la forma autorizada en este Capítulo, será ilegal el que cualquier persona, a sabiendas o intencionalmente:

"(1) Fabrique, distribuya, dispense, transporte u oculte, o posea con la intención de fabricar, distribuir, dispensar, transportar u ocultar una sustancia controlada;

"(2) produzca, distribuya o dispense; transporte u oculte o posea con la intención de distribuir o dispensar, transportar u ocultar una sustancia falsificada."